Hammond *vs.* Hammond.

No. 97.—AMOS W. HAMMOND, plaintiff in error, *vs.* ALFRED HAMMOND, defendant.

[1.] The Statute of Limitations does not commence to run in favor of one partner against another, even after a dissolution of the partnership, as long as there are debts due from the partnership to be paid, or debts due to it to be collected.

[2.] Nor, as long as either of these things is so, is a partner barred as against his co-partner, by the principles of stale demand.

In Equity, in Monroe Superior Court.   Decided by Judge STARKE, August Term, 1855.

This bill was filed in January, 1853, and charged, that in 1832 complainant and defendant entered into partnership together, in Ruckersville, Ga. under the name and style of A. & A. W. Hammond, in the business of merchandize ; that by the terms of partnership they were to share equally in profits and losses ; that they commenced business on a stock of $20.000 and continued about eight years, during which time they purchased stock to the amount of about $20.000 per annum, which was sold at a clear profit of about fifty per cent. ; that during 1834 and 1835, complainant paid into said firm $1.020 more than he took out, and also purchased cotton which was sold by the firm, for which he advanced $2.000 ; that during the years 1836, 1837 and 1838, complainant loaned money to said firm at various times, for which he took notes amounting in all to $11.589 18—on all of which notes are small credits dated in 1841 and 1843 ; that one of said notes was under seal, dated April 29, 1837, for $2.710 82, all which notes he still holds.

That in 1838, one Gibbs entered the firm as a partner, and in about a year thereafter withdrew by agreement of all, without any liability or any further claim on the firm ; that in March, 1839, complainant paid for the firm of Hammonds & Gibbs $2.138 12, and on July 9th, 1838, $201 50, for which the firm of A. & A. W. Hammond agreed to be liable ;

that on the 19th April, 1839, Amos Hammond acknowledged, in writing, that Alfred Hammond had paid out for the firm, to various persons, the sum of $1.858 49; that on the 9th January, 1840; he advanced to the firm $660 36, for which he took a note.

That during the time the firm did business, Amos W. Hammond had sole and exclusive control and management thereof, and kept all the books, &c.; and that during that time he took for his own use from the funds of the firm, large sums of money, about $30.000, among which was the sum of $800 to pay lawyer's fees in a case of his own, $500 to buy a law library and $700 to pay for a house in Culloden ; that none of these sums are entered on the books ; that besides said sum of $30.000 aforesaid not charged, there is charged against him on the books and unsettled, the sum of about $7.000 on account.

That on the 11th January, 1840, said partnership was dissolved, and all the books and assets of the concern were turned over to the complainant for the purpose of settling up the business; that he received goods to the value of $1.-976 43, and notes and book accounts, good and bad, to the amount of $5.220 96, out of all which he realized $7.552 10; that the firm was, at the time of dissolution, indebted to persons other than complainant, the sum of $12.693 67, all of which he has paid off.

To the bill were attached schedules of the receipts and disbursements of complainant, from which it appeared that the collections were all made previous to the year 1845, except the following items :

1846.   J. H. Reynold, $37 31—interest, $18 86.
May, 1847.   E. H. Worrall, $53 65—interest,  $22 44
Feb. 1850.   R. Cash's *fi. fa.* $190 34—interest, $23 88
Dec. 18, '51.   Note R. McMillan, $32 87—int. $1 74

And the payments were all previous to 1845, except the following :

| | | |
|---|---|---|
| Jan. 7, 1845. Note to B. Thornton, $500—int. | $304 | 21 |
| April 26, 1845.   T. C. Wilhite, $16 50—   " | 9 | 64 |
| Dec. 29, 1845. Note to B. Thornton, $100—" | 53 | 00 |

And an execution in favor of B. Thornton on a judgment recovered Sept. Term, 1852, of Elbert Superior Court, against A. & A. W. Hammond, for $1.458 73, principal, and $158 80, interest, which judgment the bill charged to be on a note of said firm, but did not describe the note. This execution had been levied on a house and lot of said firm, which sold, in Dec. 1852, for $200, and the remainder was paid by complainant in 1853.

The bill charged, that in April, 1842, complainant becoming apprehensive that the Statute of Limitations might bar his claims against said defendant, so that in case of defendant's death, he might lose them; and defendant being a lawyer, and complainant having great confidence in him, he applied to said defendant on that subject, and received from him the following letter:

"ELBERTON, 25th April, 1842.

*Mr. Alfred Hammond:*

   Although accounts between merchant and merchant are not operated upon by the Statute of Limitations, and although it hath been always by our Courts so determined, yet it may happen that some of our Courts may construe the Statute otherwise hereafter; and if so, my dying intestate may make those who choose to represent me, to avoid the payment of the balance now due to you from me on account of the business between A. & A. W. Hammond at Ruckersville.

Now to avoid this, and to place it beyond all uncertainty or doubt, I do hereby acknowledge, that up to this time we have never settled the business of that firm.

  (Signed,)   AMOS W. HAMMOND."

Hammond *vs.* Hammond.

By which letter complainant charged that he was deceived and prevented from commencing legal proceedings within due time. The bill prayed for an account and relief, &c.

To this bill defendant demurred, on the ground that the bill showed on its face that the claims were all barred by the Statute of Limitations; and if any items were not barred, that complainant had an adequate Common Law remedy as to such items.

Demurrer likewise for uncertainty and multifariousness.

The Court over-ruled the demurrer, and defendant excepts to that decision.

UNDERWOOD; HAMMOND & SON; HULL, for plaintiff.

FLOYD, for defendant.

*By the Court.*—BENNING, J. delivering the opinion.

One of the grounds of the demurrer was, that the bill was barred by the Statute of Limitations; another was, that the bill was barred by the principles of equity relating to stale demands. These two were the only grounds insisted upon in the argument before this Court.

It is very doubtful whether a suit by one partner in a mercantile partnership against the other partners, for an account, is within the Statute of Limitations at all; whether it is not rather within the exception of the Statute—an exception which includes all "such accounts as concern the trade of merchandise between merchant and merchant, their factors or servants." See *Robinson vs. Alexander*, (8 *Bligh; Ang. Lim. ch.* 15, §§13, 14.)

However, we do not find it necessary to decide this question.

Each member of a partnership is its agent, to do all of its business. A part of the business of every partnership, is the payment of its debts and the collection of its credits. As

long, therefore, as there are debts of a partnership to be paid or credits of it to be collected, there is business of the partnership remaining to be done. There may be debts and credits of a partnership existing after a dissolution of it; and as long as there is any business of the partnership remaining to be done, the agency of each partner being, as it is, an agency to do the whole partnership business, continues. But as long as an agency lasts, the Statute of Limitations does not begin to run, as to the matters of the agency, between the principal and the agent; therefore, as long as there are debts of a partnership to be paid, or credits of it to be collected, the Statute of Limitations does not begin to run, as to the account between the partnership and any of its members.

And when the Statute does not run as to the account between the partnership and the members, it does not run as to the account between one partner and the other; for in reality, that account is between, not one partner and the other, but between the partners and the *partnership*. He owes the partnership so much—the partnership owes him so much—not he owes the other partners so much, the other partners owe him so much. His suit is against the *partnership*.

In 1847, 1850, 1851, Alfred Hammond, the partner whose representative is the complainant in the bill, collected debts due the partnership. In 1853, he paid a debt due from it. The bill was commenced in January, 1853; so, that within six years of the commencement of the suit, there had been in existence debts due to and from the firm. Nay more: at the very time when the suit was commenced, there was still outstanding a large note *not due*, belonging to the firm, on Amos W. Hammond, the partner who is the defendant in the bill.

[1.] It is therefore manifest, that according to the principles above stated, the suit, when commenced, was not barred by the Statute of Limitations.

And for the same reasons, the suit was not barred by the principles of Equity relating to stale demands. It cannot with truth be said of the complainant, that "there has been

gross *laches* in prosecuting rights or long and unreasonable acquiescence in the assertion of adverse rights." (2 *Story's Eq.* §1520.) One large item in the account to be settled, was not due even when the suit was commenced. We affirm the judgment of the Court below over-ruling the demurrer.