GILBERT PATTERSON, Ex'r, v. ROBERT LILLY and others.

*Partnership—Agency—Demand and Refusal—Statute of Limitations—Trusts and Trustees—Issues.*

1. Where one of the members of a firm was constituted its general managing agent by the articles of partnership, and upon the death of one partner his executor consented to a continuance of the business, *it was held* that the manager became the agent of the executor as well as of the other surviving member.

2. *Held further:* A demand and refusal to account are necessary to terminate the agency and put the statute of limitations in operation.

3. Application of the statute of limitations to trusts, constructive and direct, discussed by ASHE, J.

4. The ruling of the court below upon submission of the issues and order of reference affirmed.

(*McNair* v. *Ragland*, 3 Mur., 139; *Northcott* v. *Casper*, 6 Ired. Eq., 303; *Commissioners* v. *Lash*, 89 N. C., 159, cited and approved).

CIVIL ACTION tried at January Special Term, 1883, of RICHMOND Superior Court, before *Graves, J.*

The plaintiff, as executor of Hugh L. Patterson, deceased, brought this action against the defendants Robert Lilly and John Patterson, as surviving partners of Robert Lilly & Co., and the said Lilly and Patterson and Edmund Lilly, as surviving partners of Lilly & Patterson, for an account and settlement of the partnership dealings.

In 1866 a mercantile partnership was entered into by articles of agreement between the plaintiff's testator (Hugh L. Patterson) and the defendants Robert Lilly and John Patterson, in which it was agreed that the same should continue for two years from the 29th of March, 1866; that John and Hugh L. Patterson should furnish the capital; the expenses and losses to be defrayed out of the profits; the balance, if any, to be divided as follows: one-half to Lilly and the other half to the Pattersons in proportion to the capital contributed by each; that Robert

Lilly shall have full charge and management of the business, keep the books, and an account of all the transactions of the firm, which shall at all times be open to the inspection of the partners, have power to employ clerks, &c., and receive as compensation for his services one-half of the net profits.

The business of this firm was carried on until the time limited for its expiration, and was then continued in the name of Lilly & Patterson, without any further written agreement, but upon substantially the same terms, except that Hugh L. Patterson was to have a salary of five hundred dollars a year for services to be rendered by him.

The business was conducted in the name of Lilly & Patterson until the death of the said Hugh in 1870, and continued until 1871 for the purpose of winding up the affairs of the partnership.

In 1873 the plaintiff demanded a settlement of the partnership dealings of the said two firms, of Robert Lilly, one of the surviving partners and the managing member of them. The defendants did not refuse, but went into a settlement and divided the assets on hand, except two tracts of land, one of which was afterwards sold and the proceeds divided in 1875, leaving the other tract (which was worth about six or seven hundred dollars) unsold at the time this suit was brought.

At the time of that settlement there remained due out of the assets of the firms a balance of five hundred and seventy-five dollars to the plaintiff's testator for his salary, which had not been paid at the commencement of this action; and the defendant Robert Lilly admits the right of the plaintiff to have an account in respect to the land.

It also appears from the pleadings and admissions of the defendant, that the indebtedness of the defendant partners and others to the firms was entirely omitted in the partial settlement of 1873. In the replication of the plaintiff it is alleged, and not denied, that there were large amounts due to the partnership from the partners Robert Lilly, Hugh L. and John Patter-

son, and from Edmund Lilly and Gilbert Patterson, which are specifically set forth, none of which were included in any statement or settlement of the accounts of the firms.

The plaintiff contended there never had been any final settlement, and sought to have the account taken of the dealings of the firms of Robert Lilly & Co. and Lilly & Patterson.

The defendant Robert insisted that the account and settlement of 1873, except as to the two tracts of land and the salary due to plaintiff's testator, was a final stated account, and that the plaintiff's action was barred by the statute of limitations, and relied upon THE CODE §§155, 158, and also upon the presumption arising from the lapse of time; and he and Edmund Lilly both denied that the latter had ever been a partner of the firm of Lilly & Pattesson.

The following issues were submitted to the jury:

1. Has there been any final settlement of the partnership of Robert Lilly & Co., or of Lilly & Patterson, except as to the land and salary as alleged in the answer? No.

2. Was Edmund Lilly a partner in the firm of Lilly & Patterson? No.

3. Were the amounts set forth in the replication omitted from the settlement, if any has been made; and if so omitted, was it done by mistake or inadvertence? Omitted by mistake.

4. Is the plaintiff's cause of action barred by the statute of limitations? No.

During the progress of the trial, the defendants' counsel asked the judge to submit an additional issue, viz.: Was there a settlement of all partnership matters of R. Lilly & Co. and of Lilly & Patterson, excepting the four accounts set out in the plaintiff's replication before the commencement of this action? This was refused by His Honor upon the ground (1) because not submitted in proper time; and (2) because not presented by the pleadings. Defendants excepted.

.John Patterson, one of the partners, testified that the partners never met and took into consideration all the affairs of the

firms, nor did he think the old accounts on outside parties were included in the settlement of the accounts of the partnership.

One McLean testified that after some dispute, the book-keeper (Morrison) and the witness were asked to look over a statement made by Morrison and handed to the plaintiff, and it seemed the individual accounts of the partners with the firms were not included; and Morrison said the accounts were not included; and when Lilly's attention was called to it, he said it must have been an oversight.

The plaintiff offered to prove that the amounts of these accounts as set out in his replication was correct, but this being admitted by defendants' counsel, His Honor held that it was unnecessary.

The defendants' counsel asked the court to charge the jury that, if they believed the testimony, the plaintiff's cause and causes of action were barred by the statute of limitations. This was refused, and the court told the jury that the relation one partner sustained to another was a fiduciary one, and the statute did not bar the action.

The jury responded to the issues as indicated above, and the defendant Robert Lilly moved for a new trial, for error in the court: (1) In submitting to the jury the first issue; (2) in refusing to submit the issue proposed by the defendant; (3) for misdirection to the jury in respect to the statute of limitations. The motion was overruled, and the defendant excepted.

It was then ordered by the court that the matter be referred to the clerk to state an account of the said partnership firms, and report to the next term of the court. The defendant Robert Lilly excepted, for that the inquiry should have been confined to the items set out in plaintiff's replication, and as there was no dispute as to the amount of those accounts, nor as to the manner of distribution, it was error to refer. The defendant appealed.

*Messrs. J. D. Shaw* and *Burwell, Walker & Tillett,* for plaintiff.
*Messrs. T. A. McNeill* and *Frank McNeill,* for defendants.

ASHE, J.   The exceptions taken by the defendant are, first, to the first issue submitted; secondly, to the refusal of His Honor to submit the issue proposed by the defendant; and lastly, the alleged misdirection in regard to the statute of limitations.

The first issue was one directly raised by the pleadings.   The plaintiff alleged that there never had been a final account and settlement of the partnership dealings, and the defendant insisted that there had been a full and final account and settlement of all partnership matters, except as to the land and salary of the plaintiff's testator.

The issue proposed by the defendant, aside from not being offered in proper time, which was a matter of discretion with His Honor, was not raised by the pleadings, as properly held by the court.   The individual indebtedness of the respective partners to the firms had not been mentioned in the complaint or answer. But, in what is called the replication, which must be regarded as an amended complaint of the plaintiff, the indebtedness is specially set forth with the averment that it had been omitted in the partial settlement had in 1873; and the defendant, in his second amended answer, allowed by the court, to the amended complaint of the plaintiff, does not deny the allegations of the plaintiff with regard to this indebtedness; and therefore, they are to be taken as true, and leave nothing upon which to frame an issue.   If this were not so, the issue proposed is not a proper one, for it only embraces in the exception the four accounts set out in the amended complaint, and omits the land and the salary— though the defendant insisted that he had settled everything but these two items.

The exception to the instruction upon the statute of limitations was properly overruled.   Certainly, fiduciary relations subsist between copartners.   Collyer on Partnership, lays it down that the same rules and tests are applied to the conduct of partners as are ordinarily applied to that of trustees.   Indeed the functions, rights and duties of partners in a great measure, comprehend those both of trustees and agents.   *McNair* v. *Ragland*, 3 Mur., 139.

But the application of the statute of limitations to trusts depends upon the character of the trust, and the distinction is this: Where the trust is constructive, such as is raised by operation of law, e. g., where one takes possession of property in his own name and is afterwards by matter of evidence or construction of law changed into a trustee, lapse of time may be pleaded in bar even when his conduct was originally fraudulent, and his purchase would have been repudiated for fraud. Angel on Lim., §471. But where the trust is direct, it is a well established rule, belonging exclusively to the jurisdiction of courts of equity, that, so long as the trust subsists, the right of the *cestui que trust* cannot be barred or excluded by the trustee, by virtue of the length of time during which the latter has held possession. *Ib.*, §468. Yet it is a rule quite as well settled, that where the fiduciary character of the trustee has ceased or been put an end to by his repudiating the rights of the *cestui que trust*, as by assuming absolute ownership over the property, or by refusing to account for the same, then the statute does apply, and the *cestui que trust* must bring his action within the time prescribed or be barred. *Ib.*, §174.

But the defendant contends there was a "cesser" of the privity in this case; that the fiduciary relation between him and the plaintiff, as the representative of the deceased partner, was put an end to by the settlement which took place in 1873, and his action was barred after three years from that time. But did that work a "cesser"? "Although the representative of a deceased partner cannot, strictly speaking, be deemed a partner with the survivors, still a community of interest subsists between them. The executor is a tenant in common with them in all the partnership property and effects in possession (e. g., the two tracts of land mentioned in the pleadings); and though the choses in action go to the survivors, and the law vests in them the sole and exclusive right to reduce them into possession, yet, when recovered, the survivors are regarded as *trustees* thereof for the benefit of the partnership, and the executor of the deceased

partner possesses, in equity, the same right of sharing and participating in them which his testator would have had, if he had been still living." Story on Part., 493. So that, the representative of the deceased partner is still, to some extent, a partner with the survivors until the business of the partnership is wound up. For it is held that the statute of limitations does not commence to run in favor of one partner against another, even after a dissolution of partnership, as long as there are debts due from the partnership to be paid, or debts due to be collected. *Hammond* v. *Hammond*, 20 Georgia, 556; Wood on Lim., §210.

But conceding, as contended by the defendant, that the relation of trustee and *cestui que trust* terminated in the dissolution of the partnership by the death of Hugh L. Patterson, yet there is another fiduciary relation subsisting between the parties which opposed an obstruction to the running of the statute against the plaintiff. The defendant Lilly, by the terms of the original articles of copartnership, was constituted the general agent of the partnership. He was to keep the books, hire clerks and servants, and have the entire management of the business. And the business was continued upon the same terms under the firm of Lilly & Patterson, with the exception that the plaintiff's testator was to be paid a salary of five hundred dollars a year for certain services to be rendered by him; and after the dissolution by the death of Hugh Patterson, the business was continued in the same manner with the *consent* of the plaintiff, as he alleges—and it is not denied. This made Lilly the agent of the plaintiff as well as of the other surviving partner, and his agency continued up to the commencement of the action. He sold one tract of land in 1875 and divided the proceeds, and holds another tract subject to division. His agency had never ceased before this action. It is true a demand was made by the plaintiff in 1873, but there was no refusal; and a demand and refusal were necessary to terminate his agency. In *Northcott* v. *Casper*, 6 Ired., Eq., 303, Chief-Justice RUFFIN said: "If there be an express understanding by one to manage an estate for

another, for an indefinite period, a right to an account arises between them from time to time, but, the statute of limitations does not operate to bar an account for any part of the time while the relation of principal and bailiff subsists between them, that is, while the agency of the management of the estate is kept up. While the relation continues, there is a privity between the parties, and there is nothing to set the statute in operation": and it was held in that case that a demand and refusal were necessary to put the statute in motion. And in *Commissioners* v. *Lash,* 89 N. C., 159, it was held that where the relation of principal and agent subsists, the demand for an account necessary to put the statute of limitations in operation, must be such as to put an end to the agency. Nothing less than a *demand and refusal,* or the coming to a final account and settlement, or the death of one of the parties, will put an end to an agency. Here, there was no refusal, and the jury have found there was no final account and settlement, and the parties are still living.

As to the order of reference, we think there is no error, for upon the winding up of the affairs of the partnership, each partner has a right in equity, a *quasi* lien upon the partnership property to have it applied to the debts and liabilities of the firm; and to have a similar lien on the surplus assets for the purpose of having them applied in payment of what may be due to the partners respectively, *after deducting what may be due from them, as partners to the firm.* Lindley on Part., 471.

There is no error. Let this be certified that the case may be proceeded with in conformity to this opinion and the law.

No error. Affirmed.