STATE v. DANIEL GOULD.

*Judge's   Charge,   recapitulating   evidence—Reasonable   Doubt— Indictment— Variance—Tampering with the Jury—Discretionary Power.*

1. It is sufficient if the judge in charging the jury gives the substance of the testimony of the witnesses; and especially so, where he asks counsel if a recapitulation of the evidence in detail is desired, and no request for the same is made.

2. A charge upon the subject of reasonable doubt cannot be made the subject of exception, upon the ground that the judge superadded an explanation thereof when such explanation is in itself a proper one.

3. An indictment for murder charged that the mortal wound was inflicted with a rock, and the proof was that the instrument used was a stick ; *Held,* no variance.   The instrument of death laid in the bill and that proved are of the same character and nature.

4. Whether a new trial will be granted because the jury have been tampered with, is matter of discretion with the presiding judge upon the facts found by him.   No undue influence upon them is shown here.

(*State* v. *Grady,* 82 N. C., 643 ; *State* v. *Reynolds,* 87 N. C., 544; *State* v. *Jones, Ib.,* 547 ; *State* v. *Tilghman,* 11 Ired., 513; *State* v. *Miller,* 1 Dev. & Bat. 500; *State* v. *Brittain,* 89 N. C., 481, cited and approved).

INDICTMENT for murder removed from Anson and tried at Fall Term, 1883, of MONTGOMERY Superior Court, before *Gilmer, J.*

There was much evidence adduced in behalf of the prosecution and the prisoner, but the facts are substantially as follows:

The deceased William B. Carpenter came to his death on the night of the 6th of December, 1881, caused by a wound on the left side of his head, producing a very bad fracture of the skull.

On that night a festival was given by persons in the county of Anson, to which the deceased went about eight or nine o'clock, and after remaining a short time disappeard, and about the same time the prisoner (who was also there) disappeared and was absent about a half hour.

One Dunlop, a witness for the state, testified that some time after the deceased had left, a half or three quarters of an hour, the prisoner came to him and said he had something to tell him, and took him outside of the house and asked him if he was a friend of his, and whether he would hurt him, to which the witness replied, "I'll not hurt you if you will not hurt yourself"; and the prisoner said, "well, I've knocked Bill Carpenter with a rock." When the witness started home after the festival, the prisoner called to him and said, "let's go over the branch and see how things are." He went with him, and after passing a certain place in the road the prisoner said, "here is the place." They then went on, but turned back, and on passing the same place a second time the prisoner again said, "here is the place." Persons leaving the festival were along the road, and witness and prisoner did not stop at the place until they had passed it the third time, when witness saw a black object lying four or five feet from the road. He did not go to the object, but passed on. But the prisoner went back to it and called out to witness, "this is him." He called to the prisoner to come on, and they went to the house of the witness and stayed together there that night.

There was evidence offered tending to sustain, as well as to impeach the character of this witness, and to show that the prisoner had made threats against the deceased.

The prisoner was examined in his own behalf and denied all knowledge of the homicide. He also offered testimony to show that he did not leave the festival that night.

The state introduced evidence of the finding, near the place of the homicide, a rock and a stick—the latter having at its large end several knots or stumps of limbs which had been cut off, in the end of one of which was found human hair, corresponding in color with the hair of the deceased.

The rock and stick were exhibited on the trial, and the physician who testified for the state in regard to the description and character of the wound, stated that such a wound could not have been made with a rock of the shape of the one produced in court, but might have been made with a rock which had jagged ends; and that the wound might also have been made with the stick produced in court.

There was no exception taken by the prisoner to the reception or rejection of evidence.

The court, in its charge, did not read to the jury the notes of the evidence taken on the trial, but stated briefly the substance of the testimony of each witness, by name, remarking at the time and in the presence of the prisoner and his counsel, that the court did not deem a more detailed recapitulation of the evidence necessary, and would not give such, unless specially requested to do so by prisoner's counsel, and no such request was made.

After telling the jury, among other instructions, that they could not convict unless they were satisfied of the prisoner's guilt beyond a reasonable doubt, the judge added that this simply meant, that after the consideration of all the evidence, in all the light in which it had been presented to them in the arguments and under the instructions of the court, the jury ought not to convict the prisoner unless they felt that their minds were involuntarily led to the conviction that he was guilty as charged in the bill of indictment.

After a verdict of guilty, the prisoner moved for new trial, and assigned as grounds therefor:

1. That the court failed to read to the jury the testimony of the prisoner as taken down during the trial.

2. That the court erred in adding the explanation or definition as a part of the charge upon reasonable doubt.

3. That the bill charged the prisoner with having killed the deceassd with a rock, whereas the proof showed that the mortal wound was inflicted with a stick.

4. That the jury had been tampered with, and in support of this, the prisoner's counsel read to the court the affidavit of two of the jurors who sat on the case, to the effect that during one night in the progress of the trial the jury were kept in the court room and the outer door thereof was unlocked; and while there, one Siler passed through the room, and one George Graham remained in the room from the time the jury went in until after ten o'clock that night, and afterwards came back and remained until sometime before day-break. The court, upon consideration of the motion, and after examination of other persons, found the facts to be as follows:

On Wednesday night during the trial, the jury, who had occupied, during the recess of the court, the jury-room opening into the court room, were allowed by the officer in charge of the jury to sleep in the court room; that said Graham who had fallen asleep in a drunken condition on one of the rear benches in the room, during the afternoon session of Wednesday, roused up during the night, while the jury were in the court room, and, being then for the first time discovered by the officer, was by him led out of the room, still in a drunken, stupid condition; and in a short time he returned in the same condition, and was again led out by the officer, and was seen by him no more that night; that there was no communication between Graham and the jury or any member thereof; that there were two doors at the west end of the court room, leading by a stairway each to the first floor, which doors, while the jury remained in the room that night, were not locked, but latched; that said Siler, who resides in the town, also passed through the room during the time the jury were there,

but had no communication directly or indirectly with the jury or any member thereof.

The motions were refused, and the prisoner appealed from the judgment pronounced.

*Attorney-General,* for the State.
*Mr. Allen Jordan,* for the prisoner.

ASHE, J. The first exception taken by the prisoner was upon the ground that the judge failed to read to the jury the testimony of the prisoner, as taken down by him during the trial. The exception is founded upon section 237 of the Code of Civil Procedure, and section 413 of THE CODE, which make it the duty of the judge in charging the jury, whether in a civil or criminal action, to state in a *plain* and correct manner the evidence given in the case, and declare and explain the law arising thereon. The language of these sections is the same as that of section 130 of chapter 31 of the Revised Code, except that in the two former sections the word *plain* is substituted for the word *full* in the latter. The sections, as they stand in THE CODE and C. C. P., have been repeatedly construed by this court.

In *State* v. *Grady,* 82 N. C., 643, it is held that if evidence favorable to the prisoner be omitted by the judge in recapitulating the testimony to the jury, it is the duty of the prisoner's counsel to call it to the attention of the court, that the same may be supplied; and after verdict, an exception grounded on such omission will not be sustained. This decision was cited and approved in *State* v. *Reynolds,* 87 N. C., 544; and to the same effect is *State* v. *Jones, Ib.,* 547.

The error assigned in the second exception was to the superadded remarks of the judge in his charge on the subject of reasonable doubt. We are unable to conceive upon what ground the prisoner should have supposed that he could have been prejudiced by those remarks. His Honor told the jury that reasonable doubt meant that, after a consideration of all the evidence,

with all the light derived from the argument of counsel and the instructions of the court, they ought not to convict the prisoner, unless they felt that their minds were involuntarily led to the conviction that the prisoner was guilty as charged. So far from impairing the force of his charge on the subject of reasonable doubt, the explanation of His Honor was more favorable to the prisoner than was perhaps warranted by law.

The next exception was founded upon an alleged variance between the instrument with which the mortal wound was inflicted and that charged in the bill of indictment. The bill charges that the wound was given with a rock, and the proof rather tended to show that it was inflicted with a stick. It can make no difference whether the deceased was struck with a rock or a stick. For it is held that where the instrument of death laid in the indictment and that proved are of the same nature and character, and the method of the operation is the same, though the instrument is different, there is no variance: as if it be proved that the deceased was killed by any other instrument, as with a dagger, sword, or the like, capable of producing the same kind of death as the instrument stated in the indictment, the variance will not be material. *Rex* v. *Mackally*, 9 Co., 67 *a;* Gilbert Evi., 231 ; *Rex* v. *Briggs*, 1 Moody C. C., 318. And where the offence was charged to have been committed with a sharp instrument, and the evidence was that the wound was partly torn and partly cut, and was done with an instrument not sharp, it was held that the charge in the indictment was proved, and the degree of sharpness was immaterial. *Rex* v. *Grounsell*, C. & P., 121.

The remaining ground urged for a new trial is that the jury were tampered with. But the judge having found the facts to be, that one person passed through the room where the jury were kept during the night, and another was found asleep in a stupid, drunken condition on a bench in the rear of the room, and was put out of the room as soon as discovered, but that neither of them had any communication with any member of

the jury, there is no ground for even a suspicion that there was an undue influence brought to bear upon the jury. And even if the circumstances had been such (which was not the case here) as to show that there was an opportunity and chance for exerting an influence upon them, it would have been a matter of discretion with the presiding judge, whether he would have granted a new trial. *State* v. *Tilgham*, 11 Ired., 213; *State* v. *Miller*, 1 Dev. & Bat., 500; *State* v. *Brittain*, 89 N. C., 481.

There is no error. Let this be certified to the superior court of Montgomery county that the case may be proceeded with in conformity to this opinion and the law of the state.

No error.                                                        Affirmed.