## THE STATE v. FURNIS HARPER.

### *Jury— Verdict—New Trial.*

1. Where it appeared that after several ballots in the jury room, a proposition was made and assented to, that the verdict of a majority of the jurors should be the verdict to be returned, and another ballot being taken some of the jurors adhered to their previous opinions, and thereupon the deliberations were continued and resulted in a conviction, and the trial Judge found the fact that the verdict was the voluntary action of the jurors : *Held,* that the defendant was not entitled to a new trial.

2. A verdict will not be set aside upon vague and indefinite proof that some of the jurors were improperly approached and spoken to about the case, especially where it is not alleged that the action of the jurors so approached was influenced thereby.

3. The presence of the officer in charge of the jury at their deliberations, and the fact that the jury were allowed to separate, but still under the charge of officers of the Court, will not vitiate a verdict, in the absence of any proof or suggestion of improper conduct on the part of the jurors, or the exercise of undue influences over them.

This is an INDICTMENT for larceny, tried before *Connor, J.,* at Spring Term, 1888, of GREENE Superior Court.

The defendant was charged with stealing a hog belonging to one Eli Dorgan, and upon the trial of his plea of not guilty was convicted of the offence, and sentenced to confinement in the State prison for the term of five years, beginning with the 2d day of April, 1888. After the return of the verdict his counsel moved to set it aside for alleged misconduct of

the jury, to prove which he examined orally one Thomas Harney, whose testimony, under the findings of the Court, established the following facts :

The witness was a regular deputy of the Sheriff, and after being sworn was put in charge of the jury. On several occasions he was in the room where the jurors were, and heard part of their deliberations and witnessed the taking of several ballots, in all of which a majority were for a conviction of the defendant, but no unanimity was reached. One of the jurors then proposed that the majority should rule, and this was assented to. Upon a ballot then following, one of the jurors who had favored an acquittal changed his vote and gave it against the defendant, two of them adhering still to a vote for an acquittal. They then " reasoned together," during which the witness left, and another deputy, one Edwards, took his place and stood at the door of the room. After an absence of about five minutes the witness Harney returned and resumed his charge, and soon thereafter he was informed by the jury that they had agreed upon a verdict. The jurors then came into Court, and the foreman, on their behalf, gave in a verdict of guilty. They were thereupon polled at the instance of the defendant's counsel, and each for himself gave the same response.

At one time eleven of the jurors, under the officer in charge, left for dinner, and one of their number remained in the room in charge of another sworn deputy. There was no evidence tending to show, nor was there any suggestion that either deputy conversed with any juror in respect to the testimony, the defendant or the verdict.

The counsel then offered one of the jurors to testify in reference to the verdict, which the Judge refused to permit.

The counsel further proposed to prove by a witness, not of the panel, that during the retirement of the jury some of them were improperly *approached and spoken to* about the case by an outside party. In the exercise of his discretion,

the Judge declined to hear further testimony, and refused to set aside the verdict, for the reason that it did not appear that the jury had rendered a majority verdict, nor that the jury had been tampered with, the Court being of opinion, however, that the conduct of the officer was not proper, and so stating.

The grounds upon which the Court was asked to set aside the verdict, in order to a new trial, are:

1. For that the verdict was the result of the surrender of the convictions of the dissenting jurors to the opinion of the larger number of them, and was not in reality unanimous.

2. For that the Judge refusd to hear the affidavit offered to show a tampering with the jury.

3. For that he did not rule that the separation of the one juror from the body does not vitiate the verdict; and

4. That the testimony of a juror was refused to show misconduct.

*The Attorney General* and *Mr. John Devereux, Jr.,* for the State.

No counsel for the defendant.

SMITH, C. J. (after stating the case.) In reference to the first exception, it confronts the fact that the polling shows the assent of each juror to the verdict given in making it unanimous, and the Judge who ascertains the fact upon which a reviewing Court must proceed, finds that the unanimity was not brought about by an involuntary yielding of the convictions of the few to the many, notwithstanding the apparent assent in the jury room, for immediately thereupon, two of the three jurors, upon the vote taken, adhered to their first opinion.

We have had some hesitancy in sustaining the refusal of the Judge to hear the witness, by whom it was proposed to prove that a part of the jury were "improperly approached

.and spoken to about the case," but upon a more careful con-
.sideration we cannot find any reasonable error in his action.
The proof offered is in a vague and indefinite form, point-
ing out no specific act done or words spoken to show a tam-
pering, or that any juror was influenced or heeded what was
done or said, and the setting aside of a *suspicious* verdict
rests in the discretion of the Judge where nothing more
appears, and there is not a legal right denied.

In the words of PEARSON, J., in *State* v. *Tilghman*, 11
Ired., 513, " perhaps it would have been well had his Honor,
in his discretion, set aside the verdict and given a new trial
as a rebuke to the jury, and an assertion of the principle
that trials must not only be *fair. but above suspicion.* This,
however, was a matter of discretion, which we have no right
to revise."

He proceeds to say in this connection, the inquiry to be,
" was the misconduct and irregularities such as to vitiate the
verdict, to make it in law null and void and *no verdict?*"

The subject is elaborately discussed by C. J. RUFFIN, and
GASTON, J., dissenting, in *State* v. *Miller*, 1 D. & B., 500.

The same doctrine is held in *State* v. *Morris*, 84 N. C., 756,
and in *State* v. *Brittain*, 89 N. C., 481.

The refusal to entertain a proposition and to admit testi-
mony in its support, expressed in such loose terms and with-
out indicating any fact to prove a tampering, were surely
within the province of the Judge.

If a juror was " improperly approached " and something
said to him about the verdict, this is entirely consistent with
the regular and proper action of the juror, and may have
been unheeded by him in arriving at his conclusion as to
the defendant's guilt. It is true the record states that the
Judge, in his discretion, " refused to hear any further testi-
mony," that is, of the kind that had just been rejected,
couched in such general terms and not to prove the fact

wherein the *tampering* consisted, so as to enable him to judge of their tendency and effect in guiding the exercise of his discretion in the premises.

The third and fourth grounds are untenable, and have been so adjudged in several cases (*State* v. *Morris, supra; State* v. *Brittain, supra,* and others), inasmuch as though present, the officer had no conversation on the subject of the deliberations of the jury; nor, as the case states, was there any suggestion to the contrary.

The cases cited are on indictments for capital felonies, in regard to which more rigid restraints are put upon jurors, while more control is exercised by the Court and greater freedom tolerated than in trials for subordinate felonies and misdemeanors.

There is no error.                          Affirmed.