GEORGE W. BAKER v. WALTER R. BROWN.

(Filed 15 September, 1909.)

1. Appeal and Error—Estoppel—Res Judicata—Evidence.

When the contents of records in a former suit, upon which a plea in *estoppel* or *res judicata* is based, do not appear on appeal, the Supreme Court will not pass upon the question as there is no evidence to support the plea.

2. Evidence—Nonsuit—Limitations of Action.

Without deciding whether a motion to nonsuit upon the evidence is the proper method of raising the question of the bar of the statute of limitations, the motion will be denied when there is conflicting evidence upon the issue.

3. Partnership—Trusts and Trustees.

Partners stand in a fiduciary relationship to each other, and ordinarily the rules and tests applicable to trustees are applicable to their conduct towards each other.

**4. Same—Limitations of Actions.**

When one partner receives the assets of the firm for the purpose of paying its debts and settling its affairs he acts as a trustee or agent for his co-partner, and when such relationship is shown to exist without evidence that it had been terminated, it is not error to refuse a motion to nonsuit under the plea of the statute of limitations.

**5. Instructions—Evidence—Questions for Jury.**

An instruction, "If you find by the greater weight of the testimony that the plaintiff's evidence on the fourth issue is not positive and supported, then you will answer that issue 'Yes,'" is properly refused as invading the province of the jury to pass upon the weight and sufficiency of the evidence.

**6. Partnership—Evidence—Transactions.**

In an action to dissolve a partnership it was not error in the trial court to refuse to dismiss the action as to a certain line of business, when there was evidence that it was embraced in the partnership dealings and which was germane to the issue.

**7. Jurors—Improper Conduct—Court's Discretion.**

While it is not proper conduct for a party litigant to talk to a juror sitting in his cause, it is within the discretion of the trial judge to set the verdict aside, and his decision is not reviewable, when he had not said anything relating to the cause then being tried, and when it was found by the judge and appears to be harmless in its effect.

**8. Motions—Set Aside Verdict—Additional Evidence—Court's Discretion.**

When the trial judge has heard the evidence adduced upon a motion to set aside a verdict because of the improper conduct of a party in talking to a juror in his cause, it is within his discretion to refuse additional evidence, and his decision is not reviewable.

APPEAL from *Peebles, J.,* May Term, 1909, of BEAUFORT.

*B. B. Winborne* and *J. B. Martin* for plaintiff.
*Winston & Matthews* for defendant.

WALKER, J. This action was brought by the plaintiff to dissolve a partnership existing between him and the defendant, and for an account and settlement of the business and affairs of the partnership. There was evidence tending to show that the parties were engaged, as partners, in conducting "a general mercantile, sawmill and lumber business." The defendant averred in his answer and introduced evidence to show that the firm was engaged only in a mercantile business and that the "sawmill and lumber dealings" were not a part of the transactions of the firm. He also alleged that the partnership was dissolved in 1899, more than three years before this action was commenced, and pleaded

the statute of limitations in bar of the action. The plaintiff alleged that the firm was not dissolved in 1899 and never had been dissolved, but that the business was discontinued and he took possession of its assets for the purpose of paying its outstanding debts and liabilities. The defendant also averred that the plaintiff had agreed with him to take the assets of the partnership and assume and pay its debts. There was a controversy between the parties as to whether the "hotel and lot at Kelford" were purchased with funds belonging to the firm, but this matter was settled, as will appear by the judgment, and is eliminated from the case. The plaintiff set up the records in former suits as an estoppel or *res judicata,* but these records are not before us and their contents do not in any way appear. This defense, therefore, fails because there is no evidence to sustain it.

The defendant moved to nonsuit the plaintiff, which motion was overruled.

The defendant then requested the court to charge the jury as follows: "The defendant contends that the plaintiff's evidence is uncertain, not strong, not positive, and that it is not supported by other witnesses. He also contends that his evidence is clear and positive, and that it is supported by disinterested witnesses. That is for you (the jury) to determine. The law has a rule for weighing all testimony. If witnesses are in all respects of equal character and credit, the law attaches greater weight to the evidence of the witness who is positive and supported than it does to the evidence of one who is doubtful or undecided and unsupported. With the rules of law as your guide, you are to ascertain the quality and character of the evidence in this case."

This the court gave, but refused to give the rest of the instruction as requested and which is as follows: "If you find by the greater weight of the testimony that plaintiff's testimony on the fourth issue is not positive and is unsupported, and that the defendant's evidence is positive and supported, then you will answer that issue 'Yes.'"

The court submitted certain issues to the jury, which, with the answers thereto, are as follows:

1. "Is the plaintiff's cause of action barred by the statute of limitations?" Answer: "No."

2. "Was the lumber plant and its business, including the purchase and manufacture of timber and lumber, embraced in the partnership of Baker & Brown?" Answer: "Yes."

3. "Were the hotel and lot at Kelford purchased with any of the funds of the partnership of Baker & Brown, in whole or in part?" Answer: "Yes; in part."

4. "Was there a dissolution and settlement of the partnership, and did Baker, the plaintiff, agree to assume the debts of the partnership, take the property of the firm and other property, and release Brown, defendant, from all liability on account of said partnership?"   Answer: "No."

5. "Did the plaintiff, Baker, receive from his partner, Brown, sufficient assets of the firm of Baker & Brown to pay the debts of said firm?"   Answer: "No."

Upon motion of the plaintiff, the answer to the third issue was set aside, and the plaintiff consented that said issue should be answered "No," which was done.

There was evidence supporting the respective contentions of the parties in respect to the issues submitted by the court. The defendant moved for a new trial; the motion was overruled and judgment entered upon the verdict for the plaintiff. The defendant, in apt time, excepted to the several rulings of the court, which were adverse to him, and appealed from the judgment.

The defendant's motion to nonsuit the plaintiff, because the action is barred by the statute of limitations, was properly overruled. If this be the proper method of raising that question, as to which we express no opinion, there was abundant evidence to show that the action was not barred. Indeed, there was scarcely any evidence to the contrary. If there was such evidence, it was the province of the jury to pass upon the conflicting proof and determine, under instructions of the court, as to the law, whether the action was barred.

It is well settled by the authorities that partners stand in a fiduciary relation toward each other. The same rule and tests are applied to the conduct of partners as are ordinarily applicable to that of trustees. In law the functions, rights and duties of partners, in a great measure, comprehend those both of trustees and agents. We so held in *Patterson v. Lilly,* 90 N. C., 82. Referring to that case, when discussing a question similar to the one now before us, *Justice Burwell,* in *Faison v. Stewart,* 112 N. C., 332-344, said: "When within the scope of the business of the firm, a partner does any act in the name of the partnership, he binds all his associates, for he is in all such matters their agent, as they are his. And where a partner takes into his possession or borrows from the firm or appropriates to his own use any of the assets of the copartnership, he assumes towards the other partners the position of a trustee, and is bound to account with them for the assets so taken or appropriated or borrowed, whenever the other partners make demand upon him so to do." There must be some action taken by the one partner against the other, such, for example, as a demand for an account and settle-

ment, in order to terminate this fiduciary relation before the statute of limitations will begin to run (*Rencher v. Anderson,* 95 N. C., 208; *Rhyne v. Love,* 98 N. C., 486); and in this connection it may be well to quote what is said by *Justice Ashe* in *Patterson v. Lilly,* 90 N. C., p. 87, as to the nature of this trust relation subsisting between partners, and as to how it may be ended: "Where the trust is direct, it is a well-established rule, belonging exclusively to the jurisdiction of courts of equity, that, so long as the trust subsists, the right of the *cestui que trust* cannot be barred or excluded by the trustee by virtue of the length of time during which the latter has held possession. Yet it is a rule quite as well settled that where the fiduciary character of the trustee has ceased or been put an end to by his repudiating the rights of the *cestui que trust,* as by assuming absolute ownership over the property or by refusing to account for the same, then the statute does apply, and the *cestui que trust* must bring his action within the time prescribed or be barred," citing Angel on Limitations, secs. 468 and 174. If one of the partners receives the assets of the firm for the purpose of paying its debts and settling its affairs, he acts as a trustee or agent for his copartner, and the statute does not begin to run until in some way the fiduciary relation ceases to exist. It is further said in *Patterson v. Lilly,* 90 N. C., at p. 88: "The statute of limitations does not commence to run in favor of one partner against another, even after a dissolution of the partnership, as long as there are debts due from the partnership to be paid, or debts due to be collected. *Hammond v. Hammond,* 20 Ga., 556; Wood on Lim., sec. 210." There is no evidence in this case to show that the statute bars the plaintiff, but the trend of all the evidence is the other way. The cases of *Patterson v. Lilly* and *MacNair v. Ragland,* 7 N. C., 139, seem to be directly in point, and the principles therein stated are decisively against the defendant's contention. The facts of the latter case are substantially identical with those presented by the record before us. We have considered this question somewhat at length, as it appears to be the defendant's principal reliance for a reversal of the judgment. We have not cited the numerous authorities to be found in the brief of the plaintiff's attorneys, as we deemed those to which we have referred sufficient to show that this objection of the defendant is untenable. There was, therefore, no error in the ruling and charge of the court as to the statute of limitations.

The court properly rejected the latter portion of the instruction which the defendant requested to be given to the jury in regard to the nature of the evidence adduced by the parties and the weight to which it was entitled. It was for the jury to pass

upon the weight of the testimony and its sufficiency to establish any particular fact, and not for the court. Indeed, the instruction given by the court in response to the prayer was quite as favorable to the defendant as the law permitted it to be, and he has no reason to complain that a part of the instruction was omitted.

The refusal of the court to dismiss the action "as to the dealings in lumber and timber" was not erroneous, as there was some evidence that they were transactions of the partnership.

The defendant moved to set aside the verdict because the plaintiff had talked to one of the jurors. This was not proper conduct on the part of the plaintiff, when unexplained, but the evidence shows that it was inadvertent and that what he said did not even remotely relate to the case tried by the jury of which he was a member, and was utterly harmless. It had no influence whatever upon the jury or the juror with whom the plaintiff talked, and the Court so finds the facts to be. As was said by *Judge Pearson,* in *State v. Tilghman,* 33 N. C., at p. 552, "Perhaps it would have been well had his Honor, in his discretion, set aside the verdict and given a new trial as a rebuke to the jury and an assertion of the principle that trials must not only be *fair, but above suspicion.* This, however, was a matter of discretion, which we have no right to reverse. Our inquiry is, was the misconduct and irregularity such as to vitiate the verdict, to make it in law null and void and *no verdict?"* That·case is an authority for the position that, under the facts of this case, the motion for a new trial was addressed to the sound discretion of the court. "When the circumstances are such as merely to put suspicion on the verdict by showing, not that there *was,* but that there might have been undue influence brought to bear upon the jury, because there was opportunity and a chance for it, it is a matter within the discretion of the presiding judge; but if the fact be that undue influence was brought to bear upon the jury, as if they were fed at the charge of the prosecutor or prisoner, then it would be otherwise." *State v. Brittain,* 89 N. C., 483. See, also, *State v. Harper,* 101 N. C., 761; *State v. Morris,* 84 N. C., 757; *State v. Tilghman, supra; State v. Gould,* 90 N. C., 658; *State v. Barber,* 89 N. C., 523. In *Moore v. Edmiston,* 70 N. C., at p. 481, *Justice Bynum,* for the Court, thus formulates the rule: "The line of distinction is that to vitiate and avoid a verdict it must appear upon the record that undue influence was brought to bear on the jury. All other circumstances of suspicion address themselves exclusively to the discretion of the presiding judge in granting or refusing a new trial. He is clothed

with this power because of his learning and integrity and of the superior knowledge which his presence at and participation in the trial gives him over any other forum. However great and responsible this power, the law intends that the judge will exercise it to further the ends of justice; and though doubtless it is occasionally abused, it would be difficult to fix upon a safer tribunal for the exercise of this discretionary power, which must be lodged somewhere." It does not appear in this case that the jury were influenced in the slightest degree, in deciding upon their verdict, by what the plaintiff said to one of the jurors. On the contrary, it appears that they were not and could not have been so influenced.

The request of the plaintiff that he be allowed to offer additional testimony after the motion to set aside the verdict had. been heard upon evidence already introduced, and had been finally submitted to the judge for his consideration and decision, was clearly a matter within his discretion, and its refusal is not subject to review in this Court.

Upon a review of the whole case, we find no error in the rulings and judgment of the court.

No error.