Finley v. Gilmore.

No. 22,605.

*In re* THE ESTATE OF JOHN E. LAWLESS, Deceased (J. L. FINLEY, Claimant, *Appellant,* v. MRS. J. B. GILMORE et al., *Appellees*).

SYLLABUS BY THE COURT.

1. PARTNERSHIP—*Liquidation of the Business Intrusted to One Partner— Accounting and Settlement Between Partners.* Where by agreement of two partners their partnership business is turned over to one of them for the purpose of settling its outstanding liabilities and collecting its claims and accounts and winding up its affairs, a cause of action will lie on behalf of the liquidating partner against the retiring partner for the latter's share of the ascertained liabilities of the partnership which have been paid by the liquidating partner.

2. SAME—*Action for Accounting—Limitation of Action.* Under the circumstances stated in the first paragraph of the syllabus, the statute of limitations does not begin to run until the business has been wound up by the liquidating partner and the liability of the retiring partner ascertained.

Appeal from Rawlins district court; MOSES A. WILSON, judge *pro tem.* Opinion filed July 10, 1920. Reversed.

*T. F. Garver,* of Topeka, for the appellant; *J. L. Finley,* of St. Francis, *pro se.*

*E. E. Kite,* of St. Francis, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action on a claim against the estate of the late John E. Lawless of Rawlins county. The claim was founded upon the outcome of a certain business partnership which had existed between the plaintiff and Lawless.

In the year 1907, plaintiff established Lawless in business at McDonald in Rawlins county and furnished him with a stock of merchandise valued at $4,374.48. Plaintiff and Lawless agreed that the latter should conduct the business and pay the expenses, and that the profits should be divided between them. Lawless was to order and purchase merchandise on the advice and approval of plaintiff, and to turn over to plaintiff the cash and notes received from the sale of merchandise, and Lawless was to be credited therewith and charged with the value of the original stock and the cost of other goods purchased. Plaintiff was to supervise and handle their dealings with wholesalers. Under these arrangements, the business was conducted from 1907 until March, 1911, although Lawless did not wholly comply with his duty to report to plaintiff, nor did he always remit the cash and proceeds of the business, and he sometimes did obligate the business to wholesalers without the approval or knowledge of plaintiff. In March, 1911, the parties agreed to discontinue the business, and the goods, notes, and accounts were turned over to plaintiff. It was agreed that the plaintiff should liquidate the business and pay off the bills payable to wholesalers, collect the notes and accounts, and that plaintiff and Lawless would then make a final settlement.

All these agreements were oral. The community where the business had been conducted suffered from crop failures and short crops during the years 1911 to 1915, inclusive, and the collection of outstanding accounts was consequently very slow. Lawless had obligated the business heavily to wholesalers, and he had failed to keep plaintiff apprised of the nature and extent of these obligations, and some litigation arose over their adjustment. Lawless, also, without the knowledge of plaintiff, had withdrawn cash and merchandise from the business for his private use. It took a long time to straighten out these details, and it was not until 1916 that the business was finally wound up; and then it became apparent that plaintiff was entitled to recoupment in the sum of $7,147.40.

Meanwhile, Lawless had died in February, 1914. No administrator had been appointed for his estate, nor was any effort made to secure such appointment until in May, 1917, when plaintiff, as a creditor, filed application therefor. An appointment was made in December of that year, and thereafter plaintiff filed a verified claim against Lawless's estate, consisting of a book account, covering all the transactions of the business from its inception in 1907, and which involved debits of $30,478.94 and credits of $23,331.54. Plaintiff's claim was rejected by the probate court, and on appeal a demurrer to his petition was sustained on two grounds: (1) no cause of action, and (2) the statute of limitations.

Since the cause was determined on a demurrer to plaintiff's petition, the foregoing recital of facts must be taken as true, so far as concerns this appeal; and the defendant's first objection raised by the demurrer was not well taken. While the business relationship between plaintiff and Lawless was governed by the terms of their contract, that relationship was essentially a partnership. Their dealings with each other and with the wholesalers and with the public were of a character which logically belong in the category of partnerships. Their rights and liabilities toward each other and toward third parties were those of partners. It was proper and not unusual that they should agree that one of them should liquidate the business. It was proper, and legally correct, that their final adjustment with each other should be deferred until the business was completely wound up so far as concerned their debt-

ors and creditors. And so this court has no difficulty in holding that the petition stated a cause of action. In *Brooks v. Campbell,* 97 Kan. 208, 155 Pac. 41, it was said:

"When a partnership business is closed out, a cause of action for an accounting and settlement arises between the partners, under an implied contract mutually and equally to share the profits and bear the burdens of the partnership." (Syl. ¶ 1.)

What about the statute of limitations? The law is thoroughly established that when a business partnership is discontinued and its affairs are turned over to a liquidator for the purpose of being wound up, a final settlement between the partners cannot be made, whether for division of proceeds or for determination of their proportionate liabilities, until the partnership assets have been sold, the credits collected, and the debts paid.

Taking plaintiff's petition as true, as at present we are bound to do, the long delay in winding up the business was caused by the uncertainty surrounding the extent of the liabilities to wholesalers, and the series of crop failures in that locality which delayed the collection of the outstanding notes and accounts. Notwithstanding these delays, if the final determination of the status of affairs in 1916 had disclosed a surplus in the hands of the liquidating partner, Lawless or Lawless' estate would have an absolute right to share in that surplus. Moreover, if there had been no assets in Lawless' estate to make it worth while to have an administrator appointed until such surplus was disclosed in 1916, the right of the Lawless heirs to have an administrator appointed to sue for a share of that surplus could not have been denied. In this case an earlier appointment of an administrator would have served no purpose. There would have been nothing for an administrator to do. He would merely have had to wait until the liquidating partner had accomplished the task of winding up the business. The fact that the contract was not in writing does not affect it. It was the circumstances and not the terms of the contract that delayed its performance for more than a year. (*Henshaw v. Smith,* 102 Kan. 599, 602, 603 171 Pac. 616; *Dubbs v. Haworth,* 102 Kan. 603, 607, 171 Pac. 624.)

Finley v. Gilmore.

In *Brooks v. Campbell*, supra, this court casually noticed the principle which governs this case. In the opinion it was said:

"The other case cited by appellant (*Benoist et al. v. Markey, Tutor, et al.*, 25 La. Ann. 59) is much more to the point. There the firm of Benoist, Shaw, Murphy & Newman had formed a partnership in 1859. Its business was ruined by the Civil War, and there was nothing done towards a settlement of the partnership business until 1866, when suit was begun and a receiver appointed upon the application of the parties. Litigation of several years' duration ensued. This was a plain case where the statute should not be held to begin to run until a settlement of the partnership affairs had been effected and until the partners could have an opportunity to commence proceedings under the judgment settling the respective rights of the liquidating partners.

"Other cases holding that the statute does not under all circumstances begin to run on the dissolution of the partnership are *Holloway v. Turner*, 61 Md. 217, *Jordan v. Miller and als.*, 75 Va. 442, and *Riddle v. Whitehill*, 135 U. S. 621. They relate to partnerships being wound up in due course, realizing assets, satisfying debts, etc. Obviously no statute of limitations would run in such cases." (p. 211.)

*Brooks v. Campbell* has been republished in Ann. Cas. 1918 D. 1105, and is followed by an elaborate note, from which we glean these pertinent excerpts:

"If after the dissolution of a firm either by the act of the persons concerned or by operation of law it is necessary to continue the partnership relation for the purpose of winding up the firm's affairs, the statute cannot begin to run against an action between the partners or their successors in interest for an accounting and settlement so long as the winding up of the firm's business continues. *Riddle v. Whitehill*, 135 U. S. 621, 10 S. Ct. 924, 34 U. S. (L. ed.) 282; *Hammond v. Hammond*, 20 Ga. 556; *Prentice v. Elliott*, 72 Ga. 154; *Bauduc's Syndics v. Laurent*, 2 La. 449; *Benoist v. Markey*, 25 La. Ann. 59; *Bender v. Markle*, 37 Mo. App. 234, 244; *Patterson, v. Lilly*, 90 N. C. 82, 88; *Miller v. Harris*, 9 Baxt. (Tenn.) 101; *Peel v. Giesen*, 21 Tex. Civ. App. 334, 51 S. W. 44; *Marsteller v. Weaver*, 1 Grat. (Va.) 391; *Jordan v. Miller*, 75 Va. 422, 449; *Boggs v. Johnson*, 26 W. Va. 821.

· · · · · · · · · · · ·

"Where by an agreement between the partners the assets of the firm are left with one or more of them after the firm has been dissolved for the purpose of winding up the business, the partnership relation is continued and the statute cannot begin to run against the right of the copartners to an accounting so long as the trust thus created in the firm property in the hands of the liquidating partner or partners continues and is recognized by all of the partners as such. *Causler v. Wharton*,

62 Ala. 358; *Taylor v. Morrison*, 7 Dana (Ky.) 241; *Coudrey v. Gilliam*, 60 Mo. 86; *Dye v. Bowling*, 82 Mo. App. 587, 592.

. . . . . . . . . . . . . .

"Therefore until the liquidating partners have succeeded in closing up the firm's business and the accounts of debtors and creditors of the firm and in adjusting the balances between the partners the statute cannot begin to run against an action between the partners or their representatives in interest for an accounting and settlement. *Thomas v. Hurst*, 73 Fed. 372; *Haynes v. Short*, 88 Ala. 562, 7 So. 157; *McKaig v. Hebb*, 42 Md. 227, 235; *Gray v. Green*, 142 N. Y. 316, 37 N. E. 124, 40 Am. St. Rep. 596; *Miller v. Harris*, 9 Baxt. (Tenn.) 101; *Roberts v. Nunn* (Tex.) 169 S. W. 1086." (pp. 1108, 1109, 1111.)

It follows that the judgment on the demurrer must be reversed and the cause remanded for further proceedings.

It is so ordered.