No. 38,436

In the Matter of the Estate of C. A. Clover, Deceased. (CARRIE M. SMITH, Claimant, *Appellant,* v. FLOYD HARGETT, Administrator of the Estate of C. A. Clover, Deceased, *Appellee.*)

(237 P. 2d 391)

Opinion filed November 10, 1951.

*John Staley Holden,* of Cimarron, argued the cause, and *W. C. Gould* and *R. R. Mitchell,* both of Dodge City, were with him on the briefs for the appellant.

*C. C. Linley,* of Cimarron, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This is a suit to recover money on an express oral contract. The appeal is from an order sustaining a demurrer to plaintiff's amended petition.

C. A. Clover died intestate a resident of Gray county on May 4, 1949, and in due time an administrator was appointed for the administration of his estate. Shortly thereafter, and within the time prescribed by the probate code for the filing of claims in probate court against the estate of deceased persons, the claimant, Carrie M. Smith, a sister of the decedent, filed a petition in probate court for the allowance of a claim against his estate charging the estate was indebted to her in the sum of $2,560 under and by virtue of an oral contract whereby, on March 17, 1933, and pursuant to the terms of such agreement, she had conveyed her brother an undivided one-fifth interest in a half section of real estate located in Gray county, by warranty deed reciting receipt of $1 and other valuable consideration, upon his promise and agreement to pay her a satisfactory amount for her interest in the land when he got on his feet.

Soon after the foregoing petition was filed in the probate court the administrator of the estate moved to make it more definite and certain in 10 particulars. This motion was sustained and the petition was amended. The administrator then demurred to the amended pleading. Thereupon, on request of the claimant, the case was transferred to the district court for further proceedings and trial. There the administrator's demurrer to the claimant's amended petition was sustained and she was given additional time to plead. Claimant took advantage of the permission accorded her by the trial court and filed a second amended petition which, omit-

ting formal allegations and divers other averments pertaining to the factual situation heretofore related, reads:

"5. That the deceased, C. A. Clover, is the brother of this petitioner, and that said brother came to petitioner's house in Greenwood County, Kansas, on or about the 17th day of March, 1933, and orally offered to purchase petitioner's one-fifth (⅕) undivided interest in the above described land. That C. A. Clover offered to pay this petitioner a satisfactory amount for her one-fifth (⅕) undivided interest in the land when he, C. A. Clover, got on his feet. That petitioner does not remember the exact words used by C. A. Clover in his oral offer. That no definite price was fixed in the oral agreement as to the satisfactory amount which would be paid petitioner, but in effect and purport meant fair market value of the real property on or about the 17th day of March, 1933, that no definite time for payment was fixed in the oral agreement but in effect and purport meant that C. A. Clover would pay petitioner when he, C. A. Clover, became financially able to pay.

"6. That petitioner orally accepted the offer made by C. A. Clover, deceased. That on or about the 18th day of March, 1933, this petitioner signed and delivered to C. A. Clover a deed conveying her one-fifth (1/5) undivided interest in the above described real property; which deed is now recorded in the Office of the Register of Deeds, Gray County, Kansas, in Quitclaim Deed Book Forty-one (41), page Five hundred eighty-one (581) and is referred to and made a part of this petition as if fully set forth herein.

"7. That C. A. Clover was the brother of petitioner, and that C. A. Clover lived in and was a resident of Gray County, Kansas, from about 1933 until the date of his death. That petitioner was a resident of Greenwood County, Kansas, from the date of the agreement above described and is now a resident of Greenwood County, Kansas. That the distance from petitioner's residence to the former residence of C. A. Clover was approximately 200 miles. That from 1933 until the date of death of C. A. Clover, petitioner saw C. A. Clover only a few times. That C. A. Clover did not discuss his financial affairs with his family or friends. That petitioner did not know anything of the finances of C. A. Clover from 1933 until a few months before the date of his death. That because C. A. Clover did not discuss his financial affairs with his family or friends, petitioner made no inquiry as to the financial affairs of C. A. Clover, prior to the death of C. A. Clover. That since C. A. Clover was petitioner's brother and petitioner did not know anything of the financial affairs of C. A. Clover, no demand has ever been made of C. A. Clover for payment of the amount due.

"8. That within two years from the date of death of C. A. Clover, who died on or about the 4th day of May, 1949, C. A. Clover told petitioner that he thought he would soon be on his feet and that he would then take care of the debt he owed petitioner. That petitioner does not remember the exact words used by C. A. Clover but in effect and purport meant that he, C. A. Clover, would soon be financially able to pay petitioner for her interest in the land. That this was the first time after the 18th day of March, 1933, that C. A. Clover stated to petitioner or to anyone else, to the petitioner's knowledge, that he was about to get on his feet financially.

"9. That C. A. Clover got on his feet and became financially able to pay

petitioner prior to his death. That petitioner first learned shortly after the 8th of July, 1949, when the inventory and appraisement was filed in the Probate Court of Gray County, Kansas, in the Estate of C. A. Clover, deceased, that C. A. Clover and his estate were financially able to pay the amount owed petitioner."

The next move in the district court was made by the administrator who challenged the pleading just quoted by a motion wherein he asked:

"1. For an order of this Court striking from said Second Amended Petition, all of paragraph 8 thereof for the reason that all allegations and matters therein contained are redundant and irrelevant.

"2. For an order of this Court requiring claimant to attach to her Second Amended Petition, a copy of the deed referred to in paragraph 6 of said Second Amended Petition.

"3. For an order of this Court requiring Claimant, Carrie M. Smith, to amend and make more definite and certain, the 9th paragraph of her Second Amended Petition so as to set forth on what date the said C. A. Clover first 'got on his feet and became financially able to pay petitioner prior to his death' and if she does not know approximately what date the said C. A. Clover first 'got on his feet,' to amend her said Second Amended Petition by so stating."

After a hearing the district court sustained the first ground of the foregoing motion and overruled grounds 2 and 3. Immediately after this ruling the administrator demurred to the pleading in question on the basis it failed to state a cause of action and, showed upon its face the contract therein relied on was too indefinite to be enforced and that if claimant ever had any cause of action under its terms it was now barred by laches and the statute of limitations. When this demurrer was sustained the claimant perfected the present appeal and now, under proper specifications of error, charges the trial court erred in sustaining the demurrer and in sustaining the motion to strike paragraph 8 of the second amended petition.

From what has been heretofore related it is apparent the principal issue for decision in this case springs from the trial court's ruling on the demurrer. We have little difficulty in concluding contentions of the appellee to the effect its action in that respect can be sustained on grounds of laches on the part of the appellant, indefiniteness of the contract or, except for questions pertaining to the statute of limitations, failure of the pleading to state a cause of action, cannot be upheld. The books, as will presently appear, disclose many cases holding that a contract to pay when the promisor is able or when the financial condition of his business permits are enforceable.

The question whether appellant's cause of action is barred by the statute of limitations presents a far more serious question.

Under our statute (G. S. 1949, 60-306) and our decisions construing its terms there can be no question that the statute of limitations does not commence to run against a cause of action based on contract until the accrual thereof and that the accrual of the cause of action means the right to institute and maintain an action for its enforcement. (See *Fletcher v. Holcomb*, 142 Kan. 177, 181, 45 P. 2d 1053; *Kinnard v. Stephens*, 122 Kan. 347, 251 Pac. 1085; *Bruner v. Martin*, 76 Kan. 862, 868, 93 Pac. 165.)

It must, we believe, be conceded that under its terms as pleaded the appellant could not have maintained successfully an action against the promisor upon the contract until the latter got on his feet or became financially able to pay. Thus it becomes evident her cause of action did not accrue and the statute of limitations did not begin to run against a right of action upon his promise to pay until the happening of that event. This conclusion is supported by well recognized legal treatises and by our own decisions. See 34 Am. Jur., Limitations of Actions, 113 § 140, where it is said:

"The statute of limitations does not begin to run against a right of action upon a promise to pay a debt when able, until ability to pay exists, especially where the debtor is in no way derelict in his efforts to acquire the means to pay. Although the authorities do not seem to be uniform, it has been held that a promise to pay 'when convenient,' 'or at earliest convenience' or 'earliest possible convenience,' is a promise to pay when the party making the promise is able to pay, that is, has the means of doing so, and that the statute begins to run from, and only from, that time. *The statute begins to run as soon as the ability to pay becomes a fact, whether the creditor is aware of it or not; and when the statute commences to run, it is not interrupted by the fact that at some subsequent period the debtor may not have been able to pay.*" (Emphasis supplied)

See, also, 54 C. J. S., Limitations of Actions, 46 § 131, where the same subject is treated and discussed.

That this court is committed to the rule announced in the foregoing quotation from Amerian Jurisprudence appears upon careful analysis of the opinions in *Briney v. Toews*, 150 Kan. 489, 493, 95 P. 2d 355; *Finley v. Gilmore*, 107 Kan. 349, 191 Pac. 256; *Henshaw v. Smith*, 102 Kan. 599, 602, 171 Pac. 616; *Joyce v. Bank*, 90 Kan. 745, 136 Pac. 232; *Chamberlain v. Monkhouse*, 67 Kan. 836, 72 Pac. 860.

The great weight of authority supports the rule, to which we subscribe, that a promise to pay when a promisor is able is not

an absolute but conditional promise to pay and that it is incumbent upon the person seeking to enforce such contract to allege and prove the ability of the promisor to pay the obligation (See decisions cited in 94 A. L. R. Anno. 721). By the same token, particularly since, as we have seen, a cause of action based on such a promise accrues the moment the promisor's ability to pay becomes a fact, we are inclined to the view it should be held the promisee is required to plead when the promisor's ability to pay became an established fact in order to state a good cause of action. However, we are not required to go that far in the instant case. Heretofore we have called attention to the fact the appellee's motion to require the appellant to amend the 9th paragraph of her amended petition, by setting forth the date the alleged promisor got on his feet and became financially able to pay appellant prior to his death and if she did not know that date then to amend her petition by so stating, was denied. In view of the allegations set forth in the first sentence of that paragraph appellee was entitled to have such pleading made more definite and certain in the particulars requested and upon successful resistance of that motion the pleading thereafter, when tested by demurrer, became subject to strict construction as to all matters covered by the motion. (See *Kinderknecht v. Hensley*, 160 Kan. 637, 640, 164, P. 2d 105; *Arensman v. Kitch*, 160 Kan. 783, 788, 165 P. 2d 441, and cases there cited.)

This construction, under the rule established by our decisions, compels the conclusion that if appellant had amended her pleading as she should have been required to do the amendment would have shown that the promisor got on his feet and became financially able to pay more than three years prior to the date on which appellant commenced the present action. So construed the amended petition was barred by the three year statute of limitations (G. S. 1949, 60-306 [second]) and the trial court was correct in sustaining a demurrer thereto based on that premise.

We have not overlooked appellant's contention the 9th paragraph of her pleading shows that she did not learn until after the 8th day of July, 1949, that the promisor and his estate were financially able to pay the amount owed her under the terms of the contract and that therefore her action was not barred. The trouble with this contention is, as we have heretofore indicated, the question when the statute commences to run does not depend on when the

appellant learned the promisor became able but upon when his ability to pay actually became a fact.

There remains the question whether the trial court erred in striking paragraph 8 of the pleading in question. We do not think it did. Appellant's cause of action, as we have heretofore indicated, accrued when the promisor became able to pay, not when statements were made by him as to when he thought he would become able to do so. If, as the amended petition must be construed appellant's cause of action accrued more than three years prior to the date of the commencement of the action the statute of limitations was not interrupted by reason of the fact that at some subsequent period the promisor may or may not have thought he would be able to pay (34 Am. Jur., Limitation of Actions, § 140, *supra*) and under the statute (G. S. 1949, 60-312) an acknowledgment of any existing liability, debt, or promise to pay under the terms of a contract had to be in writing and signed by the promisor in order to suspend its operation.

The judgment is affirmed.