AMERICAN EXPRESS FIELD WAREHOUSING CORP. *v.*
FIRST NATL. BANK.

5-2352                                                346 S. W. 2d 518

Opinion delivered May 29, 1961.

*Rose, Meek, House, Barron, Nash & Williamson,* for appellant.

*Coleman, Gantt & Ramsay,* for appellee.

ED. F. McFADDIN, Associate Justice. The only parties to this appeal are the appellant, American Express Field Warehousing Corporation (hereinafter called "American"), and Walter J. Garic, Inc. (hereinafter called "Garic"); and the only item challenged on this appeal is the judgment rendered by the Circuit Court in favor of Garic and against American for $54,325.73. All other parties and issues have passed out of the case.[1]

To understand the issue, a somewhat lengthy statement of background facts is necessary. At all times herein, Garic was a corporation, domiciled in New Orleans, Louisiana and engaged in the rice exporting business; American was a warehousing corporation engaged in the storage of rice in McGehee, Arkansas; and John Lammers was an individual, operating a rice mill in McGehee, Arkansas. In September 1958 Lammers, by contract, came into possession of the McPherson rice mill and storage warehouses in McGehee. The McPher-

[1] In the Trial Court, the plaintiffs were the First National Bank of Lake Providence, Louisiana, the Hibernia National Bank of New Orleans, Louisiana, the National Bank of Commerce of Pine Bluff, and Walter J. Garic, Inc.; and the defendants were the American Marine and General Insurance Company, John Lammers, and the American Express Field Warehousing Corporation. The litigation was to determine the liability of the defendants, or some of them, to the plaintiffs, or some of them, for rice destroyed by fire or otherwise lost from the warehouse of American Express Field Warehousing Corporation. All of the plaintiffs have been satisfied in various ways by the result of the trial in the Circuit Court except the plaintiff Walter J. Garic, Inc. In the Trial Court, after all the evidence had been heard, Lammers confessed judgment in favor of Garic; the Circuit Court jury found in favor of the Insurance Company on the Garic claim; and the Circuit Court jury found in favor of Garic on its claim against the American Express Field Warehousing Corporation. It is to reverse the said judgment against it and in favor of Garic that the American Express Field Warehousing Corporation prosecutes this appeal.

son facilities were so arranged that the storage warehouses could be operated entirely separate from the rice mill; yet, by suitable conveyors, rice could be transferred by conduits to or from the storage warehouses and the rice mill. Lammers leased all of the facilities of the storage warehouses to American for all times herein involved, and these facilities consisted of twenty concrete silos and a metal-clad wooden building in which there were five storage bins and a small office. There was a driveway between the wooden building and the concrete silos; but rice could be conveyed by conduit to or from the silos and the bins in the wooden building.

Lammers continued to operate the rice mill while American operated the storage facilities as just described. Elbert Ikard was American's warehouse custodian, and he alone carried the key to the wooden building and the key to the master switch where the current could be turned off and on to operate the conveyors to carry the rice to or from the mill and/or the silos and wooden building. American, being a warehousing corporation, would generally issue a nonnegotiable receipt, signed by Ikard, for rice stored in its facilities at McGehee. But, under the contract between Lammers and American, Lammers was permitted to store rice in the American warehouse facilities at McGehee free of charge if no warehouse receipt was issued for such rice. The Lammers-American contract provided that if Lammers stored rice with American without obtaining a warehouse receipt, then such rice was stored at Lammers' risk. Lammers also agreed to indemnify and hold American harmless against all damage, risk, or claims—including claims of third parties—that American might incur by reason of permitting such storage of rice without warehouse receipts being issued.

With all of the foregoing as background, we come to the events that caused the present litigation. In May 1959 Garic, for $66,068.19, purchased 1,064,850 pounds of rough rice from the Commodity Credit Corporation. This rough rice was stored in Dumas, Arkansas and was

covered by warehouse receipts. Garic and Lammers entered into a contract by the terms of which Lammers, for $5,225.97, would get the rough rice from the Commodity Credit Corporation at Dumas, transport it to Lammers' rice mill at McGehee, mill the rough rice, and deliver to Garic or its order a total of 7,666 bags of milled rice. Time was of the essence of the contract. Garic sent Lammers the said warehouse receipts and Lammers obtained the rice and transported and stored it in the American warehouse facilities, without obtaining any warehouse receipts therefor. Later, Lammers shipped to Garic 670 bags of milled rice (each bag being 100 pounds), but never shipped the remaining 6,996 bags. It is for the value of the undelivered rice that the present action is concerned.

For some unexplained reason, Lammers delayed the milling of the remainder of the Garic rough rice. At the trial he claimed that it had been transferred from the concrete silos to the wooden warehouse of the American facilities. Elbert Ikard testified that he did not know why the Garic rice was not milled when Lammers first received it; that on Thursday before the fire on Saturday night, all of the Garic rice in question was transferred from the concrete silos to the wooden warehouse facilities of American; that there were two bins entirely filled and one partially filled; and that each of the wooden bins was 20x30x40 feet. Ikard also testified that he left McGehee about 5:00 p.m. Saturday afternoon, July 18th (before the fire that night or Sunday morning); that he went to his home in Lake Providence, Louisiana; that he returned to McGehee, Arkansas Tuesday morning, July 21st; and that he then learned for the first time that the wooden warehouse (wherein it was claimed the Garic rice was stored) had been destroyed by fire on Saturday night, July 18, 1959.

Garic made demand on American for the Garic rice; the demand was refused; and Garic sued American, the insurance company that carried American's insurance, and also Lammers, for the value of the unreturned

Garic rice. The alleged liability of Lammers was because of the contract. The alleged liability of the insurance company was because, if the Garic rice were destroyed by fire, the insurance company was liable. The insurance company convinced the jury (on evidence subsequently to be briefly mentioned) that the Garic rice was not in the wooden building at the time of the fire; that, in fact, the bins in the wooden building were practically empty; and the jury verdict was for the insurance company. The alleged liability of American to Garic was because American knew the rice belonged to Garic when it was received from Lammers, and that American was negligent in allowing the rice to disappear from the wooden warehouse: that is to say, if the rice was not destroyed by fire, it was removed *before* the fire, and such removal was because of the negligence of American, its agents, servants, or employees. The jury verdict and judgment thereon was for Garic and against American in the sum of $54,325.73; and from that judgment American brings this appeal, presenting the issues now to be discussed.

I. *American says*: *"A verdict should have been directed for appellant."* To support this point American says that Garic neither alleged nor proved any negligence on the part of American and hence Garic cannot recover; and, secondly, the only inference permissible from the evidence is that *Lammers* obtained the Garic rice from American, in which event the appellant has no liability to Garic. While the evidence is conflicting on several matters, nevertheless, on appeal, we must give the evidence its strongest probative force in favor of the jury verdict. See *Albert* v. *Morris*, 208 Ark. 808, 187 S. W. 2d 909, and cases there cited. In so viewing the evidence we find:

1. There is substantial evidence that American all the time knew, or had notice, that Garic was the owner of the rice which came from the Commodity Credit Corporation at Dumas, Arkansas. Such knowledge or notice is true because the truck weight tickets issued at Dumas

stated that the rice was "shipped to Walter J. Garic, Inc."; and the copies of these weight tickets were delivered to Ikard when he received the rice for American and stored it in the concrete silos; and notice or knowledge so received by Ikard in the course of his duties for American was knowledge or notice to American. *Sov. Camp W. O. W.* v. *Cole,* 192 Ark. 326, 91 S. W. 2d 250; and *Bank of Hoxie* v. *Meriwether,* 166 Ark. 39, 265 S. W. 642.

2. American received the rice and stored it in the concrete silos in the latter days of May or the early days of June 1959. The receipt of the rice by American is conceded. Thus American became, with notice or knowledge, the bailee of Garic's rice. The contract between Lammers and American provided that American would not be liable to *Lammers* for rice stored without warehouse receipts being issued; but that contractual provision between American and Lammers could not be stretched by American to extend to Garic, who did not know of such a contractual provision. As between American and Garic, the ordinary rules of bailment apply.[2]

3. One of the rules governing the liability of the bailee (American) to the bailor (Garic) is that when the bailor sues the bailee for the *conversion* of the bailment (the rice), the bailor has the duty of proving (a) that the bailment was delivered to the bailee, (b) that due and seasonable demand was made on the bailee for the return of the bailment, and (c) that the bailee could not or would not return the bailment. When the bailor proves these three points, the law says that the bailee had converted the bailment unless the bailee goes forward with the proof and shows either (1) that the bailment was destroyed by fire without the negligence of the bailee, or (2) that the bailment was lost or stolen from the bailee without the negligence of the bailee.

---

[2] The appellee contends that, regardless of any question of negligence, American is liable to Garic under the terms of the Uniform Warehouse Receipts Act, because—claims appellee—the Act covers liability in cases where the receipts were issued or should have been issued. We do not have to decide whether the Uniform Warehouse Receipts Act applies because the application of common law principles leads to the conclusion here reached. See annotation in 13 A.L.R. 2d 681.

*National Garages* v. *Barry,* 217 Ark. 593, 232 S. W. 2d 655; *Warren* v. *Geater,* 206 Ark. 518, 176 S. W. 2d 242; 6 Am. Jur. (revised) 458 ''Bailments'' § 370; 8 C. J. S. 341 ''Bailments'' § 50.

4. In the case at bar, Garic's complaint had a count against American that sounded in conversion.[3] To that count American answered with a denial. At the trial, Garic established by the evidence the three requirements in a conversion action—*i. e.,* delivery of the bailment, demand for return, and refusal—so that American then had the burden of going forward and establishing that the bailment was lost or destroyed without the negligence of American. American offered no evidence, but it was established by other litigants in the trial below—and so found by the jury—that the Garic rice was *not* destroyed in the fire which consumed the wooden warehouse. The evidence is overwhelming on this point. A number of witnesses—some of them entirely disinterested—testified that after the fire there were no ashes in the ruins which could have been from rice. Sampling cups were pushed deep in the debris, and only burned hulls were found. Bulldozers and other large machines scattered the debris in a vain effort to find any signs that rice had been burned in the fire. The jury wisely concluded that the bins in the wooden warehouse, destroyed by fire, did not contain rice at the time of the fire. It was on this evidence that the jury exonerated the insurance company. So American failed to prove loss of the bailment by fire, without the negligence of American; and American offered no evidence, and there is none in the record, as to any other loss of the bailment without negligence of American. In such a situation, the jury, under the instructions of the Court (hereinafter to be dis-

---

[3] This was item 1 (b) of the complaint and is entitled, "Alternative Claim Against John Lammers and American Express Field Warehousing Corporation"; and in that paragraph Garic alleged that the rough rice was received by American Express Field Warehousing Corporation on behalf of Walter J. Garic, Inc.; that subsequent to the receipt of the rice, it was removed from the warehouse without authority from Garic; that due demand has been made on American for the delivery of the rice; and that American has wrongfully failed and refused to deliver the same. This was a count in conversion.

cussed), returned a verdict against American for what the jury found to be the value of the bailment. We conclude that the evidence was sufficient to submit the case to the jury and also to support the verdict rendered.

II. *American says*: *"The Court erred in giving Instructions Numbers 9 and 10 on behalf of Garic."* Each of these instructions is rather lengthy. In Instruction No. 9 the Court told the jury that if it found from a preponderance of the evidence that Garic was the owner of certain rice delivered to American, and that Garic demanded the return of the rice and American refused to return it, then the verdict would be for Garic, unless the jury further found that the rice was destroyed by fire or removed from the warehouse by Garic or Lammers.[4] This instruction was correct, in view of what we have heretofore said. There was no evidence that the rice involved in this litigation was ever redelivered by American to Lammers or Garic. Of course, Lammers did mill and deliver to Garic a small portion of the rice, as will be mentioned in Topic III herein; but the redelivered rice was not the rice involved in this case. Ikard admitted that he received the Garic rice

[4] We copy American's objection to this instruction: "American Express Field Warehousing Corporation objects generally and specifically because it is a peremptory instruction and because said instruction is not a correct declaration of law, further specifically because the evidence is undisputed that if all or a portion of that rice was delivered to Mr. Lammers upon his request that such delivery was lawful under the statute; and that any of the Garic rice remaining, if any, was in the warehouse at the time of the fire and was destroyed by fire. So that there is no basis on which the jury could find at this time that this defendant was liable to the plaintiff Garic, Inc.; further specifically because it omits the matter of the burden of proof; further specifically because there is no competent evidence from which the jury could determine how much of the Garic rice in question was delivered to Lammers and milled by him, so that the jury would have to speculate on that matter; further specifically because the plaintiff, Garic has no standing to sue this defendant on the rice in question; further specifically because the instruction permits the jury to find us liable for the value of the rice whereas suit against us is not for value of rice but for the contract price that Garic paid the CCC for the rice; further specifically because it omits to give credit for the amount of Garic rice admittedly delivered by Lammers to Garic; further specifically because under the undisputed evidence Lammers was the depositor of that rice with this defendant and that we were a gratuitous bailee of that rice and therefore could not be liable for failure to deliver or for any loss of the rice in the absence of gross negligence of which there is no allegation or proof."

from Dumas, Arkansas, and said it was transferred to the wooden warehouse before the fire. What we have said, and the cases we have cited, in Topic I of this opinion dispose of the objections as to Garic's right to sue American for conversion. The matter of the value of the missing rice will be discussed in Topic III of this opinion. Instruction No. 10 was likewise on the theory of conversion; and what we have already said disposes of appellant's objections to that instruction. To summarize, we find no merit to appellant's objections to Instructions Numbers 9 and 10.

III. *American says: "The verdict is excessive."* We do not know how the jury determined the figure of $54,325.73, but appellant has not established that the verdict is excessive: quite to the contrary, we find ample evidence that would have supported a verdict for even a slightly larger amount, as we will now detail.

1. According to the evidence, Garic purchased 1,064,850 pounds of rough rice[5] from Commodity Credit Corporation, for the total price of $66,068.19. This would be 6.2 cents per pound as the cost of the rough rice.

2. Lammers milled enough rough rice to deliver to Garic 670 bags of milled rice, which would be 67,000 pounds of milled rice. It was shown by the evidence that it would require 100 pounds of rough rice to make 69 pounds of milled rice. So the 67,000 pounds of milled rice would equal 97,150 pounds of rough rice.

3. Deducting 97,150 pounds from the original figure of 1,064,850 pounds would leave 967,700 pounds of

[5] One witness testified that all of the purchased rice was not received from the Commodity Credit Corporation by Garic; but the weight tickets in the record showing the Garic rice hauled to American's warehouse total 1,329,480 pounds of rough rice. We use the original figure of 1,064,850 pounds of rough rice for calculation purposes; but even if we should take the lower figure of 1,058,820 pounds, as the rough rice actually received by Garic from the Commodity Credit Corporation and delivered to American's warehouse, the final net figure of Garic's loss would be $59,623.54 instead of $59,997.40, as shown in the paragraph number 3 of this topic, which, at all events, disproves the statement that the jury verdict is excessive.

rough rice remaining as belonging to Garic; and this, at the cost figure of 6.2 cents per pound, would total $59,997.40 that Garic lost.

There is some testimony as to cost of milling and also as Garic's profit; but it is not shown that the rice had a less value on August 28, 1959 (the day of demand by Garic) than the original cost to Garic. So it is not shown by appellant that the verdict is excessive.

Affirmed.

GEORGE ROSE SMITH, J., not participating.