**Peter Toll WALTON, Appellant,**

v.

**RAMOS AASAND & CO., Appellee.**

**No. S–7870.**

Supreme Court of Alaska.

Aug. 21, 1998.

Michael Jungreis, Anchorage, for Appellant.

Mark P. Melchert, Jermain, Dunnagan & Owens, P.C., Anchorage, for Appellee.

Before MATTHEWS, C.J., COMPTON, EASTAUGH and BRYNER, JJ.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

Peter Toll Walton and Ramos Aasand & Company (RACO) disagreed over the amount that Walton owed RACO for its accounting services. The superior court found that no genuine issue of material fact remained regarding Walton's liability to RACO for RACO's work, and that the parties had not mutually assented to a settlement agreement proposed by Walton. Because we agree with that reasoning, and because we find no abuse of discretion in the superior court's attorney's fees award, we affirm its entry of summary judgment and award of attorney's fees to RACO.

## II. FACTS AND PROCEEDINGS

Walton retained RACO to perform accounting services for Walton and his business entities between July 1992 and August 1994. Disputes arose over the bills RACO sent Walton for the work. Walton sued RACO in June 1995, requesting that the court order RACO to produce its records related to its work for Walton and determine the amount Walton owed RACO. RACO counterclaimed for nearly $49,000—the sum it contended Walton owed.

In the summer of 1995, Walton made a series of offers of judgment, offering to settle only RACO's counterclaims. In September 1995, in response to one of the offers, RACO's counsel wrote that RACO would accept Walton's offer of $35,000 "in full settlement of all claims." Walton then filed a proposed judgment stating that only RACO's counterclaims against Walton were settled. RACO filed a proposed judgment that appears to have encompassed both Walton's claims and RACO's counterclaims. In October 1995 RACO notified the superior court and counsel of RACO's "rejection of the offer of judgment previously submitted to the court by [Walton] as having been accepted."

In February 1996 RACO moved for summary judgment for $53,674.38—the amount that it alleged Walton owed, plus interest. RACO also sought judgment on Walton's claim for inspection of RACO's records, on RACO's breach-of-contract counterclaim, and on RACO's argument that Walton was estopped from denying his obligation to pay. RACO supported its motion with affidavits and invoices. Walton opposed RACO's motion and requested a 120–day continuance under Civil Rule 56(f) so that he could depose certain witnesses. In February 1996 Walton also moved for summary judgment, seeking to enforce what he contended was a settlement agreement for $35,000 in settlement of RACO's counterclaims.

Having concluded that the issue was moot, the superior court did not rule on Walton's Rule 56(f) motion. More than 120 days after Walton had filed his Rule 56(f) motion, the court instructed Walton to "file any further opposition on the merits ... no later than July 22, 1996." The superior court heard argument on the cross-motions for summary judgment in August 1996. It granted summary judgment to RACO on RACO's motion, finding no genuine issue of material fact regarding Walton's liability for the underlying debt. It also granted summary judgment to RACO on Walton's motion, finding that RACO had not accepted Walton's offer of judgment. The court awarded $48,963.48 to RACO for its professional services. RACO moved for full attorney's fees, and in December 1996 the court awarded attorney's fees of $21,560—sixty percent of RACO's claimed fees.

Walton appeals from the entry of summary judgment against him on both motions and from the award of attorney's fees.

## III. DISCUSSION

### A. Summary Judgment for RACO on RACO's Motion

█ Walton argues that genuine issues of material fact concerning Walton's liability to RACO precluded summary judgment for RACO. RACO responds that Walton failed to present evidence creating a genuine issue of material fact. RACO argues that Walton merely "assert[s] error in a vague and conclusory fashion," and that his assertions to the superior court were insufficient to overcome RACO's prima facie showing that its work had been appropriate and that its bills were accurate.[1]

The superior court granted RACO's motion for summary judgment on the ground that RACO supplied "detailed invoices and explanations of the billing process and the substance of the work performed." RACO also submitted an affidavit from Kim Aasand, who had performed much of the work, de-

scribed the work performed, and affied that it had been necessary. The affidavit made an initial showing establishing the necessity for the services and the accuracy of the charges. It made a prima facie showing that RACO was "entitled to judgment on the established facts as a matter of law." *Broderick v. King's Way Assembly of God Church*, 808 P.2d 1211, 1215 (Alaska 1991).

To avoid entry of summary judgment against him, Walton had to demonstrate that a genuine issue of material fact still existed, and that he could "produce admissible evidence reasonably tending to dispute the movant's evidence." *Id.* Walton responded by submitting his own testimony describing his suspicions of RACO's improper work and billing. He made conclusory assertions that RACO did things that were not requested, required, or appropriate.

The superior court found Walton's allegations unpersuasive, explaining that he should have "come forward with some evidence of where in fact there was unnecessary work done—some evidence of overcharges, some evidence of any kind of wrongdoing or wrongful billing. [He] has not done so." We agree with the superior court. *See Alaska–Canadian Corp. v. Ancow Corp.*, 434 P.2d 534, 536 (Alaska 1967) (stating that "it was incumbent that the party opposing the [summary judgment] motion clearly state its position or defense and show the court how it planned to support its position or defense with facts which would be admissible in evidence at the trial"). Walton did not support his allegations with evidence countering RACO's materials. Walton stated that he "believed" RACO had acted improperly, and that he would be able to provide more information after more discovery. Walton, however, did not produce any admissible evidence to rebut RACO's prima facie showing. His mere beliefs or suspicions, unsupported by admissible evidence, were insufficient to create a genuine issue of material fact. *See French v. Jadon, Inc.*, 911 P.2d 20, 24–26

---

1. We review a superior court's grant of summary judgment de novo. *Public Safety Employees Ass'n v. State*, 895 P.2d 980, 984 (Alaska 1995). Summary judgment is appropriate if "the evidence in the record fails to disclose a genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Dayhoff v. Temsco Helicopters, Inc.*, 848 P.2d 1367, 1369 (Alaska 1993) (quotation and citation omitted).

(Alaska 1996). We conclude that the superior court properly granted summary judgment to RACO.

■ Walton also argues that the superior court improperly denied him the opportunity to conduct discovery. He asserts that he decided not to conduct thorough discovery on RACO's summary judgment motion because he thought he would prevail on his motion to enforce the alleged settlement agreement. He apparently believed that, if his summary judgment motion failed, the superior court would then allow him to conduct discovery on RACO's motion.

Walton requested a 120–day continuance on February 20, 1996. In April 1996 the court scheduled argument on both summary judgment motions for August 1, 1996. Although the court never ruled on Walton's motion for a 120–day continuance, Walton still had more than 150 days to prepare for the hearing. Moreover, Walton candidly acknowledges that, "[a] few weeks before" the August 1 hearing, the court ordered him to file any further opposition to RACO's motion by July 22, 1996. After receiving that order, Walton did not seek a continuance, ask for a ruling on his Rule 56(f) motion, or claim inability to submit responsive affidavits before July 22. Nor did he argue at the August 1 hearing that he had been unable to meet the July 22 deadline, and that the hearing should be continued and the July 22 deadline extended. Only after judgment was entered did Walton gather and submit affidavits that might have created a genuine issue of material fact regarding RACO's work and billing. The superior court, however, never denied him the opportunity to conduct discovery and never prevented him from submitting affidavits in time for the hearing on the summary judgment motions. We conclude that Walton had ample opportunity to conduct discovery and oppose RACO's summary judgment motion, and had adequate warning that the court planned to hear argument on the summary judgment motions at the August hearing. Because Walton failed to produce evidence creating a genuine issue of material fact, the superior court properly granted RACO judgment as a matter of law.

■ We also reject Walton's argument that, by granting summary judgment against him, the superior court imposed litigation-ending sanctions. Walton relies on cases involving litigation-ending sanctions for discovery violations. *See, e.g., White Mountain Mining Partners v. Ptarmigan Co.*, 906 P.2d 1357, 1362–63 (Alaska 1995); *Otis Elèvator Co. v. Garber*, 820 P.2d 1072, 1074 (Alaska 1991). He cites no authority, and we are aware of none, indicating that the entry of summary judgment after the superior court concludes that there is no genuine issue of material fact is a litigation-ending sanction.

**B.** *Summary Judgment for RACO on Walton's Motion*

■ Walton argues that he and RACO entered into an agreement to settle RACO's counterclaims against him. He contends that his offer was unambiguous, that RACO accepted it, and that the superior court erred either in construing RACO's response as a rejection, or in not finding a genuine issue of material fact regarding the parties' intentions. RACO maintains that the parties did not enter into a settlement agreement because they never agreed to the same terms. The superior court found that the parties did not mutually assent to a settlement, and that no genuine issue of material fact remained.[2]

■ We apply basic contract-law principles of contract formation to settlement agreements. *See, e.g., Davis v. Chism*, 513 P.2d 475, 481 (Alaska 1973) (stating, "[a]n

---

**2.** When ruling on a motion to enter judgment on an alleged settlement agreement, the superior court "has discretion to deny the motion if the court determines that material issues of fact exist as to the existence of the settlement agreement or to a material term of the settlement." *Pavek v. Curran*, 754 P.2d 1125, 1126 (Alaska 1988). We review the superior court's decision for abuse of discretion. *See Rice v. Denley*, 944 P.2d 497, 499 (Alaska 1997). A finding about whether the parties to an alleged settlement agreement reached a meeting of the minds turns on a question of fact; we will set aside a finding of fact only if it is clearly erroneous. *See Young v. Hobbs*, 916 P.2d 485, 487–88 (Alaska 1996). A factual finding is clearly erroneous "when we are left with a definite and firm conviction on the entire record that a mistake has been made, even though there may be evidence to support the finding." *Martens v. Metzgar*, 591 P.2d 541, 544 (Alaska 1979).

offer of judgment and acceptance thereof is a contract," and requiring a meeting of the minds about the essential terms of the agreement). When deciding whether parties have formed a contract, we have emphasized the importance of mutual assent: "In order for a contract to have been formed, it was essential that acceptance of [the] offer be unequivocal and in exact compliance with the requirements of the offer that [the offeror] had made." *Thrift Shop, Inc. v. Alaska Mut. Sav. Bank*, 398 P.2d 657, 659 (Alaska 1965).

We conclude that the superior court did not err in finding no mutual assent. RACO apparently attempted to accept an offer that Walton never made: RACO's letter referred to settling "all claims" and dismissing the litigation, while Walton only offered to settle the counterclaims asserted by RACO. The parties' subsequent conduct supports this conclusion: Walton prepared a proposed judgment that would have resolved only the counterclaims, and RACO prepared a judgment form that would have resolved all claims. RACO also promptly filed a rejection of Walton's offer of judgment, explaining that a misunderstanding had occurred between counsel.

Walton also argues that further discovery is necessary to ascertain the parties' intent. Because it is clear that Walton and RACO did not reach agreement on the terms of a settlement, no amount of discovery from RACO or its attorney or principals could have established a meeting of the minds. Indeed, Walton conceded in the superior court that RACO's attorney had not intended to accept Walton's offer to settle only RACO's counterclaims. We hold that no genuine issue of material fact remains, and that the superior court properly granted judgment to RACO as a matter of law.

On appeal, Walton argues for the first time that partial performance can be the basis for finding that RACO accepted Walton's offer. Because he did not assert this argument in the superior court, we decline to address it.

*See Zeman v. Lufthansa German Airlines,* 699 P.2d 1274, 1280 (Alaska 1985).

## C. *Attorney's Fees*

■ Finally, Walton asserts that the superior court erred in awarding RACO attorney's fees of $21,560—sixty percent of RACO's claimed actual attorney's fees and approximately three times the award RACO would have received under Alaska Civil Rule 82(b)(1).[3] The superior court explained that it departed from the Rule 82(b)(1) schedule because, although it did not find that Walton had proceeded in bad faith, it did find that he had increased RACO's costs by filing redundant pleadings and by requesting time to respond to RACO's counterclaims and then failing to address them. The superior court characterized Walton's conduct as "vexatious."

Having reviewed the record, we find no abuse of discretion in awarding RACO sixty percent of its attorney's fees. *See, e.g., Brunet v. Dresser Olympic Div. of Dresser Indus., Inc.,* 660 P.2d 846, 847–48 (Alaska 1983) (upholding attorney's fees award of over sixty percent of actual fees despite no finding of bad faith); *Hausam v. Wodrich,* 574 P.2d 805, 811 (Alaska 1978) (upholding attorney's fee award of eighty-six percent of actual fees).

## IV. *CONCLUSION*

We AFFIRM the superior court's grant of summary judgment to RACO on both motions, and we AFFIRM the attorney's fees award.

FABE, J., not participating.

---

**3.** Trial courts have broad discretion in awarding attorney's fees under Civil Rule 82. *Grimes v. Kinney Shoe Corp.,* 938 P.2d 997, 1000 n. 4 (Alaska 1997). We will disturb a trial court's award of attorney's fees only if we find that the trial court abused its discretion—that is, if the award is manifestly unreasonable. *Palfy v. Rice,* 473 P.2d 606, 613 (Alaska 1970).