Michael G. SILVERS, Appellant,

v.

Irene L. SILVERS, Appellee.

No. S–8631.

Supreme Court of Alaska.

April 14, 2000.

---

obligor is liable to the state under AS 25.27.120(a) or (b).

**5.** 957 P.2d 1350 (Alaska 1998).

**6.** 910 P.2d 590 (Alaska 1996).

**7.** *See id.* at 595.

**8.** Op. at 784.

Danny W. Burton, Wasilla, for Appellant.

William K. Walker, Anchorage, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

MATTHEWS, Chief Justice.

### I. INTRODUCTION

Michael Silvers appeals the superior court's entry of judgment against him for both conversion of personal property and liability on a series of loans from his mother, Irene Silvers. We reverse and remand.

### II. FACTS AND PROCEEDINGS

Irene L. Silvers advanced money to her son, Michael G. Silvers, several times between March 7, 1983, and October 22, 1991. Michael repaid Irene only partially for these advances.

Over time, Irene and her domestic companion, Garfield Funnell, also stored several items of personal property at Michael's Wasilla residence. Funnell died intestate in 1993. Michael eventually sold his house and directed Irene to remove her possessions from the premises. Under Michael's observation, Irene retrieved various items. A subsequent inventory of the personal property revealed that numerous items belonging to Irene had disappeared.

On August 9, 1996, Irene recorded a notice of right to lien against Michael's Wasilla residence to secure repayment of her loans. In response, Michael filed a complaint against Irene on August 19, 1996, seeking to expunge the notice of lien. Irene's answer asserted counterclaims for repayment of the advanced funds and conversion of her missing personal property. The superior court granted a preliminary injunction expunging Irene's claim of lien, leaving only her counterclaims at issue for trial.

At trial, Irene appeared pro se. Michael, who had relocated to Washington state, did not appear.

The superior court issued its findings of fact and conclusions of law, ruling in relevant part that (1) Irene's monetary advancements to Michael constituted an open-ended "family loan," under which Michael had assumed a good faith obligation to repay the funds when able; (2) due to the nature and context of the loan, the applicable statute of limitations did not bar Irene's claim for repayment; and (3)

Michael had converted several items belonging to Irene. The court established Michael's combined liability for both the loan and the conversion at $27,410.01 and entered judgment for Irene in this amount.

Michael moved for relief from judgment or alternatively to amend judgment. The court amended its findings and conclusions to clarify its previous ruling, but ultimately denied Michael's motion. Michael appeals.

## III. JURISDICTION

Irene challenges the court's jurisdiction to hear this appeal because the appeal was not filed within thirty days of judgment.[1] Irene contends that Michael's motion for relief from judgment was filed under Alaska Civil Rule 60(b) and therefore did not terminate the time for filing appeals in civil cases. But we conclude that Michael's motion was also a Civil Rule 59(f) motion to alter or amend a judgment, thus terminating the time for appeal.[2] Accordingly, Michael's notice of appeal, filed within thirty days of the superior court's ruling on the motion, was timely.

## IV. DISCUSSION

A. Did the Superior Court Abuse Its Discretion by Refusing to Allow Michael and His Witness to Appear Telephonically?

We first consider whether the superior court committed reversible error by rejecting Michael's request to appear at trial telephonically. We review the trial court's ruling on this question for abuse of discretion.[3] Reversal is warranted only if we are left with a definite and firm conviction, after reviewing the entire record, that a mistake has been made.[4]

Michael had relocated to Washington state before the trial began. He submitted a motion under Civil Rule 99 requesting permission for himself and his witness Alice Beals to testify telephonically at trial. The superior court had previously granted Irene's request to permit the telephonic appearance of her witnesses, and Irene herself agreed to permit Michael's telephonic testimony. The superior court denied Michael's motion, however, explaining that evaluating Michael's credibility required in-court observation. Michael elected not to attend the trial and thus did not participate personally in the proceedings below.[5] He now argues that the court abused its discretion by rejecting his request to appear telephonically.

The visual demeanor of a witness can be a factor in evaluating the witness's credibility. But, in a variety of circumstances, the court will dispense with visual demeanor. For example, under exceptions to the hearsay rule, the court will admit a declarant's statement without the declarant's presence, making do without any visual demeanor.[6] Similarly, under Civil Rule 32, a witness's deposition can be introduced in court. Particularly relevant here is Civil Rule 32(a)(3)(B), which provides that the deposition of a witness—including a party witness—may be used for any purpose at trial if the witness is more than 100 miles from the place of trial or is out of state. Thus, Michael could have presented his testimony by deposition (without visual demeanor) and the superior court would have had no discretion to exclude Michael's deposition testimony.[7]

---

1. See Alaska R.App. P. 204(a)(1) ("The notice of appeal shall be filed within 30 days from the date shown in the clerk's certificate of distribution on the judgment appealed from....").

2. See Alaska R.App. P. 204(a)(3)[c]. Michael's motion was captioned "Motion for Relief from Judgment or Alternatively to Amend Judgment [Civil Rule 60(b)(1); Rule 59(f)]" (brackets in original).

3. See Gregg v. Gregg, 776 P.2d 1041, 1044 (Alaska 1989) (reviewing for abuse of discretion trial court's allowance of party's telephonic testimony over opposing party's objection).

4. See Wright v. Shorten, 964 P.2d 441, 443 (Alaska 1998).

5. Michael was, however, represented by counsel at trial.

6. See Alaska R. Evid. 803, 804.

7. See Buster v. Gale 866 P.2d 837, 843 (Alaska 1994) (holding that superior court erred by excluding deposition of a witness living more than 100 miles from place of trial).

Civil Rule 99 provides that "[t]he court may allow one or more parties ... to participate telephonically in any hearing or deposition for good cause and in the absence of substantial prejudice to opposing parties."[8] Although the rule allows the trial court some discretion, in *Carvalho v. Carvalho*,[9] we voiced our preference for a liberal application of Rule 99. *Carvalho* involved a mother's collection action for child support arrearage.[10] The trial court denied the father's request to appear telephonically at an evidentiary hearing and entered judgment for the mother without accepting any evidence from the father.[11] We reversed the trial court's ruling, holding that the court's refusal to permit the father to testify or present other evidence regarding contested facts had violated his due process right to a meaningful opportunity to be heard.[12] We thus concluded that, because of both the father's availability to testify and the desirability of allowing him to present his defenses, the trial court had abused its discretion by failing to permit his telephonic testimony.[13]

 Similarly, in the present case, we believe that the superior court should have allowed Michael's requested telephonic appearance. Michael was residing in Washington state at the time of trial and would have incurred significant expense in returning to Alaska to testify. Since the circumstances justified presenting Michael's testimony by deposition without visual demeanor, and since Irene agreed to his participation by telephone, it was an abuse of discretion to deny Michael's request for telephonic appearance. The trial court could also have advised Michael that if there were credibility issues for which his demeanor was truly critical, those issues might be resolved against him.

For these reasons, we remand this case for a new trial in which Michael can participate by telephone if he so chooses.

We also address the parties' other contentions since, in light of our remand, the superior court may again face them.

### B. Could Irene Recover on the Loans?

Irene advanced funds to Michael periodically from March 1983 until October 1991. She filed her counterclaim against Michael for repayment of the loans on September 9, 1996. Michael argues that the loan contract failed for indefiniteness and that the applicable six-year statute of limitations[14] barred Irene's recovery of those funds advanced before September 1990. We address each of these contentions in turn.

### 1. Does the contract fail for indefiniteness?

Michael first argues that his contract with Irene was impermissibly indefinite. He contends that the absence of a specific time of repayment term in Irene's loan agreement caused the entire contract to fail. Because contract interpretation involves questions of law, we review this issue de novo.[15]

 Michael's argument lacks merit. A pledge to repay money when the borrower becomes financially able merely represents a conditional promise and is legally enforceable upon satisfaction of the condition.[16] Such

---

8. Alaska R. Civ. P. 99(a).

9. 838 P.2d 259 (Alaska 1992).

10. *Id.* at 259–60.

11. *See id.* at 260–63.

12. *See id.* at 263.

13. *See id.* at 262.

14. Former AS 09.10.050 established a six-year statute of limitations for contract actions. The statute was repealed in 1997, and AS 09.10.053 now provides for a three-year limitations period for contract cases. Because AS 09.10.053 applies only to causes of action which accrued after August 7, 1997, Irene's claims are governed by the former version of AS 09.10.050. *See* Ch. 26, §§ 3–4, 55, SLA 1997.

15. *See State v. Arbuckle*, 941 P.2d 181, 184 (Alaska 1997).

16. *See, e.g., Smith v. Hargett (In re Clover's Estate)*, 171 Kan. 697, 237 P.2d 391, 395 (Kan. 1951); Annotation, *When Statute of Limitations Commences to Run Against Promise to Pay Debt: "When Able," "When Convenient," or the Like*, 28 A.L.R.2d 786, 788 (1953).

contracts do not fail for indefiniteness.[17] Accordingly, the limitations period began to run only after Michael actually achieved the ability to repay Irene.[18]

### 2. Does the statute of limitations bar Irene's claims?

In its findings and conclusions, the superior court addressed the statute of limitations issue as follows:

> A contract was entered into between the parties in the context of a family loan, and as such, should be interpreted within the circumstances of a loan from a mother to a son.
>
> It was expected and anticipated by the Defendant and Plaintiff understood that he was to repay the loan when he was in a position to do so; therefore, the statute of limitations did not apply, and the parties were expecting to be operating in good faith.

The superior court also found that "[e]vidence was presented during trial that Plaintiff did not repay said loan even though he has been in a position to do so, throughout the period of the loans."

Michael subsequently moved for relief from judgment or alternatively to amend judgment, arguing that the superior court erred by refusing to apply the statute of limitations to Irene's claim. In response, the court explained its previous finding:

> [L]oans must be interpreted in their full context. The context here was a set of loans from mother to son, with an understanding that the loans would be repaid when the son was able to do so. The "due date" therefore was not a set date, but it also was not undefined: the loans were due when the son could pay them, which is a time which can be determined objectively.

As such, the statute of limitations would only begin to run when the son in fact was able to pay back the loans. No testimony was presented that the son was able or had been able to pay back the loans on a certain date. Hence, the statute of limitations had not begun to run on the loans, and so the time limits imposed by the statute did not apply.

■ Michael argues that the superior court's ruling was internally inconsistent. Emphasizing the "payable when able" nature of his loan from Irene, Michael contends that the court's finding that he had been able to repay the debt "throughout the period of the loans" indicates that his status in this regard should have triggered the statute of limitations. The superior court's determination concerning Michael's ability to repay the loan involves a question of fact which we will reverse only if clearly erroneous.[19]

■ We find merit in Michael's argument. The superior court found that "[e]vidence was presented during trial that Plaintiff did not repay said loan even though he has been in a position to do so, throughout the period of the loans." The court's ruling is self-contradictory in this regard. The statute of limitations runs from the point at which Michael was able to repay the loans. But exactly when Michael attained the ability to repay Irene remains unclear from the record. Therefore on remand, the superior court should determine when Michael attained the ability to repay these loans and apply the statute of limitations from that date.

### C. Can Irene Recover the Full Value of the Converted Property That She Jointly Owned with Garfield Funnell?

■ Many of the items of personal property at issue below belonged at least in part to

---

17. *See, e.g., Clover's Estate,* 237 P.2d at 395; *Guerin v. Cassidy,* 38 N.J.Super. 454, 119 A.2d 780, 783 (1955).

18. *See, e.g., Estate of Page v. Litzenburg,* 177 Ariz. 84, 865 P.2d 128, 134–35 (App.1993); *Clover's Estate,* 237 P.2d at 395; *Guerin,* 119 A.2d at 783; *Pitts v. Wetzel,* 498 S.W.2d 27, 28–29 (Tex.Civ. App.1973); *see also In re Estate of Buckingham,* 9 Ohio App.2d 305, 224 N.E.2d 383, 385 (1967) (characterizing this approach as the majority

view). We decline Michael's invitation to adopt the minority approach under which the statute of limitations for "payable when able" contracts begins to run within a "reasonable time." *See Ricker v. Ricker,* 201 Or. 416, 270 P.2d 150, 153 (1954).

19. *See* Alaska R. Civ. P. 52(a); *Walton v. Ramos Aasand & Co.,* 963 P.2d 1042, 1045 n. 2 (Alaska 1998).

Garfield Funnell, Irene's now-deceased domestic companion. Funnell died intestate before Irene asserted her conversion claim against Michael. The superior court found that Funnell and Irene either jointly acquired or intended to share ownership of the various items stored at Michael's residence. Characterizing Irene and Funnell as co-tenants of these possessions, the court permitted Irene to recover the property's full value in her conversion suit against Michael.

■ Michael challenges this ruling, arguing that Funnell's heirs—as successor co-tenants in the property—were indispensable parties to the conversion action and that Irene's failure to join them should bar her claims. He asserts that he potentially faces double liability from Funnell's heirs. This issue involves a question of law to which we apply our independent judgment.[20]

■ "As a general rule, an owner of property must be joined as an indispensable party in any action that may adversely affect her interest in the property." [21] Applying this principle to co-tenants depends upon the factual context of the case. In *B.B.P. Corp. v. Carroll*, we noted that "[t]enants in common are not always indispensable parties to litigation involving the property, particularly where the judgment will not directly affect the interests of the co-tenant." [22] But "co-tenants should be joined where the right of any one tenant is not distinct and the relief sought is interwoven with the rights of the other tenants." [23]

■ The Montana Supreme Court's reasoning in *Dew v. Dower* illustrates the potential unfairness to both defendants and absent co-tenants that could result if joinder was not required in actions to recover jointly owned, indivisible personal property:

Adopting a general rule that allows one co-tenant to sue for all of the damages could easily infringe on the rights of another co-tenant, thus creating due process problems. In addition, co-tenants are not generally agents of each other and do not have the privity necessary for application of the doctrine of res judicata. Therefore, a rule allowing one co-tenant to sue in a personal action for the entire amount of tort damages for injury arising out of the tenancy could expose defendants to multiple actions.[24]

But where a party fails to join a necessary party, the appropriate remedy is not dismissal, but rather joinder of the necessary party.[25] Additionally, Irene should not be precluded from recovering her share of the value of the property. Under the terms of our *Carroll* test, Irene's one-half share is distinct from Funnell's and the relief Irene seeks is not necessarily interwoven with the relief which Funnell's heirs might seek. Michael will suffer no double liability since he will, at most, face liability for each half only once.

Therefore, on remand, Irene has two options. She can join Funnell's estate as a party to this litigation or she can seek recovery for only her share.

### D. Does Substantial Evidence Support the Finding That Michael Converted Irene's Property?

Michael also contends that the superior court erred in ruling that he had converted any of Irene's personal property. He argues that the record lacks any evidence of this purported conversion.

■ We review a trial court's findings of fact for clear error.[26] Our review is particu-

---

**20.** See *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

**21.** *B.B.P. Corp. v. Carroll*, 760 P.2d 519, 525 (Alaska 1988).

**22.** *Id.* (citing 3A James Wm. Moore et al., *Moore's Federal Practice* ¶ 19.09[2] (2d ed.1987)).

**23.** *Id.* at 525–26 (citations and internal quotations omitted).

**24.** 258 Mont. 114, 852 P.2d 549, 557 (1993) (citations omitted).

**25.** See Alaska R. Civ. P. 19(a) ("If the person has not been joined, the court shall order that the person be made a party."); *Carroll*, 760 P.2d at 526 (appropriate remedy for failure to join indispensable co-tenants was not dismissal, but rather joinder of the co-tenants).

**26.** See *Walton*, 963 P.2d at 1045 n. 2.

larly deferential in cases where most of the trial evidence consists of oral testimony.[27] We view all of the evidence in the light most favorable to Irene as the prevailing party.[28]

■ "Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." [29] To establish a claim for conversion, the plaintiff must prove (1) that she had a possessory interest in the property; (2) that the defendant interfered with the plaintiff's right to possess the property; (3) that the defendant intended to interfere with plaintiff's possession; and (4) that the defendant's act was the legal cause of the plaintiff's loss of the property.[30] Where the plaintiff voluntarily places her property with the defendant, the "defendant ordinarily is not required to do more than permit the plaintiff to come and get the chattel." [31]

■ But Irene may also recover under a theory of negligence.[32] As with any negligence case, the plaintiff must establish (1) a duty of care; (2) breach of the duty; (3) causation; and (4) harm.[33] Where the plaintiff transfers only the possessory interest in her property to the defendant, a bailment is created.[34] The bailment creates a duty of care. Therefore, the bailee is liable for any loss caused by his failure to exercise reasonable care.[35]

■ The plaintiff can establish a prima facie case of negligent bailment, or conversion in some jurisdictions, by proving that she delivered the property to the care of the defendant and that the defendant refused a timely request to return the property. Once the plaintiff has established a prima facie case, the defendant bears the burden of explaining his refusal to return the property,[36] since the bailee is in the best position to explain the loss of the property.[37] This standard was expressed as follows by the New Jersey appellate court in *Lembaga Enterprises, Inc. v. Cace Trucking & Warehouse, Inc.:*

**27.** See *Martens v. Metzgar*, 591 P.2d 541, 544 (Alaska 1979).

**28.** See *Voss v. Brooks*, 907 P.2d 465, 467 (Alaska 1995).

**29.** *Alaska Continental, Inc. v. Trickey*, 933 P.2d 528, 536 (Alaska 1997) (internal quotations omitted).

**30.** See *Jensen v. Goresen*, 881 P.2d 1119, 1122 (Alaska 1994).

**31.** *Alaska Continental*, 933 P.2d at 536 (quoting Restatement (Second) of Torts § 2370 cmt. g (1965)).

**32.** See Restatement (Second) of Torts § 224 cmt. b, illus. 1 (the bailee's negligent loss of bailment does not amount to conversion, but the bailee may be liable in an action for negligence).

**33.** See *Lyons v. Midnight Sun Transp. Servs., Inc.*, 928 P.2d 1202, 1204 (Alaska 1996).

**34.** See *Amidon v. State*, 565 P.2d 1248, 1254–55 (Alaska 1977).

**35.** See *C.J.M. Constr., Inc. v. Chandler Plumbing & Heating, Inc.*, 708 P.2d 60, 63 n. 4 (Alaska 1985).

**36.** See *Burgess Constr. Co. v. Hancock*, 514 P.2d 236, 239 (Alaska 1973); see also *Colgate Palmolive Co. v. S/S Dart Canada*, 724 F.2d 313, 317

(2d Cir.1983) ("Under New York law, a warehouse that fails to provide an explanation for its failure to return stored property is liable for conversion."); *American Express Field Warehousing Corp. v. First Nat'l Bank*, 233 Ark. 666, 346 S.W.2d 518, 521–22 (1961) (when the bailor proves delivery, demand, and refusal, "the law says that the bailee ha[s] converted the bailment unless the bailee goes forward with the proof and shows either (1) that the bailment was destroyed by fire without the negligence of the bailee, or (2) that the bailment was lost or stolen from the bailee without the negligence of the bailee."); *George v. Bekins Van & Storage Co.*, 33 Cal.2d 834, 205 P.2d 1037, 1040 (1949) (in bank) (failure of the bailee to make delivery on demand constitutes prima facie case of conversion); *American Equitable Assurance Co. of N.Y. v. Mussoline*, 201 Pa.Super. 271, 191 A.2d 862, 865 (1963) (where bailee opens the trunk of his car and discovers the bailment (a mink coat) missing, these facts would be "sufficient to establish a prima facie case ... which, if proved without more, would cast upon [the bailee] the burden of explaining what happened to the coat").

**37.** See *Burgess Constr. Co.*, 514 P.2d at 239; see also *Joseph H. Reinfeld, Inc. v. Griswold & Bateman Warehouse Co.*, 189 N.J.Super. 141, 458 A.2d 1341, 1343 (Law Div.1983) (holding that the bailee is in the best position to explain the loss of the property); *I.C.C. Metals, Inc. v. Municipal Warehouse Co.*, 50 N.Y.2d 657, 431 N.Y.S.2d 372, 409 N.E.2d 849, 854 (1980) (same).

in a conversion action, the bailor has the burden to prove that the bailee has unlawfully converted the goods. When goods are delivered to a bailee in good condition and then are lost or damaged, the law presumes a conversion and casts upon the bailee the burden of going forward with the evidence to show that the loss did not occur through his negligence or if he cannot affirmatively do this, that he exercised a degree of care sufficient to rebut the presumption of it. Proof of loss of or injury to the goods while in the custody of the bailee establishes a prima facie case against the bailee to put him upon his defense. This is so even though the burden of proof of the cause of action rests with the plaintiff and never shifts from him.[38]

Courts are divided as to whether delivery, demand, and refusal establish a prima facie case of intentional conversion, or merely negligence.[39] But this distinction is irrelevant for purposes of the present case. The remedy Irene seeks—compensatory damages—is available under either theory.[40]

The trial court found that Irene left her belongings with Michael and that Michael failed to return some items. This evidence established a prima facie right to recovery for Irene, placing upon Michael the burden of explaining the loss. Michael failed to offer an explanation. But, as we have held above, Michael did not have a fair opportunity to make an explanation because he was not permitted to appear telephonically.

## V. CONCLUSION

Because the superior court abused its discretion in refusing to permit Michael to appear telephonically at trial, the judgment is REVERSED. This case is REMANDED for further proceedings consistent with this opinion.

**38.** 320 N.J.Super. 501, 727 A.2d 1026, 1029–30 (App.Div.1999) (citations omitted); *see also* 8A Am.Jur.2d *Bailments* § 239 (1997) ("In an action for conversion against the bailee, the bailor has the duty of proving that the bailment was delivered to the bailee, that due and seasonable demand was made on the latter for return of the property, and that the bailee could not or would not return the bailment. A prima facie case is made out by proof of the bailment and the subsequent failure or refusal of the bailee to make delivery on demand, and it is then incumbent on the bailee to go forward with the proof and show that the bailment was destroyed, lost, or stolen, without negligence by him or her, or that its failure to return the property was not the result of its conversion of the property to its own use." (footnotes omitted)).

**39.** *See Refrigeration Sales Co. v. Mitchell–Jackson, Inc.,* 770 F.2d 98, 101–02 (7th Cir.1985) (noting this division in authority and citing cases in support of each view).

**40.** *See id.* at 102 ("Usually it makes no difference to the outcome whether the bailee is guilty of conversion or negligence. . . .").